Robert C. KARLSENG; Karlseng Law Firm, P.C.; Ashley Brigham Patten; Patten & Karlseng Law Firm, P.C.; Jacques Yves LeBlanc; and LeBlanc, Patten and Karlseng Law Firm, P.C., Appellants,

v.

H. Jonathan COOKE, Appellee.

No. 05–08–00380–CV.

Court of Appeals of Texas, Dallas.

April 21, 2009.

Paul D. Schoonover, Kleiman Lawrence Baskind Fitzgerald LLP, Susan Lea Hays, Law Office of Susan Hays, P.C., Blake L. Beckham, Daylen K. Gallman, The Beckham Group, Dallas, TX, for Appellants.

Elizabeth M. Bedell, Geoffrey S. Harper, M. Brett Johnson, Fish & Richardson P.C., Dallas, TX, for Appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice FRANCIS.

In this partnership dispute, appellants Robert C. Karlseng, Karlseng Law Firm, P.C., Ashley Brigham Patten, Patten & Karlseng Law Firm P.C., Jacques Yves LeBlanc, and LeBlanc, Patten and Karlseng Law Firm, P.C. appeal the trial court's judgment confirming a $22 million arbitration award in favor of H. Jonathan Cooke. The dispositive issue is whether the trial court, after hearing uncontradicted evidence that the arbitrator failed to disclose a prior relationship with Cooke's lead counsel, abused its discretion in denying appellants a continuance so that further discovery of that relationship could be obtained. Under the facts presented in this case, we conclude the trial court abused its discretion in denying the continuance. Accordingly, we reverse the trial

court's judgment and remand for further proceedings consistent with this opinion.

In 1999, Cooke and Karlseng went into business together to provide title closing services to lenders and real estate companies. Cooke and Karlseng formed a partnership, Title Partners, L.L.P, each with a fifty-percent ownership interest, to supervise the day-to-day management of the business. Karlseng is a licensed attorney and became a licensed escrow agent; Cooke, who is not an attorney, handled marketing duties. Over the next five years, Cooke and Karlseng expanded their business operations to several Texas cities and formed other partnerships with attorneys Patten and LeBlanc. The partners split profits according to the terms of the partnership agreements.

In 2004 and 2005, the Texas Department of Insurance (TDI) conducted an investigation of the partnerships to determine whether a licensed attorney was supervising the work of certain employees who were closing real estate transactions. Although appellants' counsel advised that the business relationship was legal, he also suggested that switching to a law firm structure could expedite a resolution with TDI. Thereafter, Karlseng, Patten, and LeBlanc created the defendant law firms and transferred partnership assets and business to the new firms without paying Cooke or observing the requirements of the partnership agreements when transferring these assets. The parties disputed whether Cooke was consulted on this change. The parties unsuccessfully attempted to negotiate a settlement to compensate Cooke either through a buyout or employment/consulting contract. Cooke claimed he was then fired, but appellants asserted he quit.

In addition to the title closing partnerships, Cooke partnered with the individual appellants in some real estate ventures.

The real estate partnerships owned the buildings occupied by the title businesses. After Cooke was either terminated or quit working for the title businesses, appellants ceased complying with the original leases, drafted new leases, and stopped paying expenses and taxes.

In March 2006, Cooke filed a lawsuit alleging appellants conspired to transfer partnership assets to new professional corporations, owned solely by the individual appellants, and falsely told Cooke that the partnerships needed to shut down due to certain state regulations. The partnership agreements provided for arbitration, and appellants filed a motion to compel arbitration. The trial court granted the motion and ordered the parties to arbitration. The parties agreed the arbitration would be administered by the Judicial Arbitration and Mediation Service (JAMS) in accordance with JAMS rules, and Robert Faulkner was selected as the sole neutral arbitrator. In these initial stages, Geoffrey Harper and Elizabeth Bedell of Fish & Richardson were listed as Cooke's counsel.

Pursuant to JAMS rules, Faulkner completed a disclosure form in which he generally disclosed that, in the previous five years, he had arbitrations and mediations with Harper of Fish & Richardson. Four days later, Cooke filed his original claim for relief, which added M. Brett Johnson, also of Fish & Richardson, as lead counsel. Faulkner did not supplement his disclosure once Johnson appeared in the case.

A contested arbitration hearing was held in December 2007. Several witnesses testified over five days, including the various parties, Karlseng's counsel in the TDI matter, and each side's damages experts. On January 31, 2008, Faulkner issued his ruling in Cooke's favor on his breach of contract and fraud claims and awarded

him more than $22 million, including $6 million in attorney's fees.

One week later, on February 7, Cooke filed a motion to confirm the arbitration award. On February 15, however, Faulkner signed an amended final award that (1) reduced the actual damages by $300,000, (2) imposed joint and several liability on all appellants, and (3) assessed costs of the arbitration against appellants. On the same day, Cooke filed an emergency motion to confirm the amended award, asserting appellants were fraudulently transferring funds, and then notified appellants that the trial court had set the motion to confirm arbitration award (not the emergency motion to confirm the *amended* award) for February 22.

In the days before the hearing, appellants filed a motion to vacate and verified motions for continuance, arguing they had not had adequate time to develop grounds for vacating the award and seeking "sufficient time to prepare and present evidence" in support of their motion to vacate. Among the grounds included in the motion to vacate was appellants' statutory complaint of "evident partiality," asserting Faulkner failed to disclose a professional relationship with Johnson. Specifically, they complained that Johnson served as law clerk for now retired U.S. District Judge Paul Brown of the Eastern District of Texas in Sherman from 1994 to 1996, and, at the same time, Faulkner served as the only magistrate judge in Sherman.

On the day of the hearing, appellants (1) notified the trial court they had not been served with the emergency motion to confirm the amended award and were unaware that it was set for hearing that day and (2) urged their motions for continuance. Appellants argued a continuance was "critical" because the arbitrator had

"breached his duty of disclosure" at the time he was selected and they needed time to investigate and to conduct discovery. As in their motion, appellants asserted Faulkner had failed to disclose a professional relationship with Johnson. In addition, they complained Faulkner had not disclosed whether Johnson had appeared before him in any arbitrations and mediations and further questioned whether Faulkner also had a social relationship with Johnson. Appellants explained they had evidence that a similar situation had arisen in another arbitration, i.e., where Harper was listed as counsel; after Faulkner made his disclosures, Johnson appeared in the case; and Faulkner did not supplement his disclosure. Appellants urged the trial court to give them additional time to depose Faulkner and Johnson about the extent of their relationship.

In response, Cooke's counsel, Harper, acknowledged that Johnson was added to the case after Faulkner's selection and disclosure and Faulkner would have a duty to amend his disclosure, "but there's nothing in there that he would amend for." He argued there was "nothing in front" of the trial court to warrant a delay for discovery. The trial court denied the continuance, and a lengthy discussion ensued as to whether appellants had been served with the emergency motion to confirm the amended award and the appropriateness of proceeding on that motion and on appellants' motion to vacate, which appellants asserted had not been set for hearing. The trial court determined the parties would go forward on both motions.

After a break in the proceedings, appellants presented evidence to support their ground of "evident partiality" to vacate the award. Johnson's ex-wife, Katie McKnish,[1] who apparently was subpoenaed

---

1. McKnish is listed in the court reporter's record as "Nicknish." We will refer to her as

during the break, testified that Johnson worked at the federal courthouse in Sherman from 1994 to 1996 and that she and her ex-husband had socialized with Faulkner. When asked whether Faulkner and Johnson were friends, she said, "yes, I believe so." She testified she and her ex-husband were invited to and attended Faulkner's retirement party. Also, she said she and Johnson took Faulkner and his wife to a private dinner to celebrate his retirement and discussed Faulkner's plans to become an arbitrator. She believed the interactions occurred in 2002, because it was right after the birth of her son. Additionally, she testified that after the baby was born, she and her ex-husband took the baby to see Judge Brown and Faulkner on two or three occasions. Cooke's counsel did not cross-examine McKnish.

Robert E. Wood, a commercial arbitrator for the American Arbitration Association and an expert in arbitration ethics, then testified by telephone. Based on evidence that (1) Faulkner and Johnson were "friends," (2) Johnson took his newborn baby for Faulkner to see on at least three occasions, (3) Faulkner invited Johnson and his wife to his retirement party and they attended, (4) Johnson and his wife took Faulkner and his wife to a private dinner to celebrate his retirement, and (5) Johnson clerked in the Eastern District for Judge Brown at the same time Faulkner was Judge Brown's magistrate, Wood opined that Faulkner should have disclosed the relationship. Additionally, Wood testified that under JAMS rules, Johnson also should have disclosed the relationship. He explained that the purpose of disclosure is to let "other people who might independently question partiality have an opportunity to raise that question." Again, Cooke's counsel did not question Wood, except to confirm that his

opinion was "based on those facts as they were described by opposing counsel[.]"

The next witness was Oklahoma lawyer Terry Garrett, who also testified by telephone. Garrett testified he represented a party in a malpractice lawsuit against Fish & Richardson. The matter was arbitrated by Faulkner, who ultimately ruled in Fish & Richardson's favor. At one point, Garrett said he noticed Faulkner and Harper "were awfully friendly," and he wrote Faulkner to ask if they had any relationship. Faulkner said they did not. Later, Johnson came into the case, but Faulkner did not supplement his disclosures. Garrett testified he was not aware of any relationship between Faulkner and Johnson until appellants' counsel contacted him.

Paul Schoonover, appellants' counsel, then testified that after the trial court denied the continuance, he attempted to have Faulkner served with a subpoena at JAMS, but a JAMS representative would not reveal Faulkner's location and instead referred him to general counsel in New York. New York counsel said he would "accept service" but would not allow Faulkner to appear. Appellants also explained that they had expected Johnson to appear at the hearing. Appellants again urged the trial court to continue the hearing so they could procure the testimony of Faulkner and Johnson. The trial court denied the continuance, granted the motion to confirm the amended award (but deleted the portion assessing costs against appellants), and denied the motion to vacate. This appeal ensued.

In three issues, appellants contend the arbitration award should be vacated because (1) Faulkner's failure to disclose his relationship with Johnson amounted to evident partiality, (2) it imposes joint and several liability and enforces an illegal

business arrangement in violation of public policy, (3) the award of attorney's fees and damages amounted to gross mistake. In their fourth issue, which is dispositive here, appellants argue the trial court abused its discretion in denying the motion for continuance so the "full nature of the Johnson–Faulkner relationship could be discovered."

■■■ We review for clear abuse of discretion the trial court's decision to deny a motion for continuance on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex.2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* In determining whether the trial court abused its discretion in denying a motion for continuance seeking additional discovery, we consider the following nonexclusive factors: the length of time the case has been on file, the materiality and purpose of the intended discovery, and whether the party seeking discovery has exercised due diligence to obtain the discovery sought. *Id.*

In considering the trial court's ruling on the motion for continuance, it is necessary to consider the law governing arbitration disputes and, in particular, evident partiality. At the outset, we note the parties' briefing relies on the Texas General Arbitration Act (TGAA) as governing this dispute. Under the TGAA, a trial court must confirm an arbitrator's award on application unless an opposing party establishes one of the limited grounds under the Act for vacating, modifying, or correcting the award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (Vernon 2005). One ground provides an award shall be vacated if the rights of a party were prejudiced by "evident partiality by an arbitrator appointed as a neutral arbitrator." TEX. CIV. PRAC. & REM. CODE ANN. § 171.088.

■■■ A neutral arbitrator exhibits evident partiality if he does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *Burlington N.R.R. v. TUCO, Inc.,* 960 S.W.2d 629, 630, 636 (Tex.1997). Evident partiality is established from the *nondisclosure itself,* regardless of whether the nondisclosed information necessarily establishes partiality or bias. *Id.* at 636. In adopting this broad concept of evident partiality, the supreme court explained that where parties agree to select an arbitrator, they can do so intelligently only if they have access to all information which might reasonably affect the arbitrator's partiality. *Id.* at 635. When the arbitrator discloses such information, the parties can evaluate any bias at the outset, "rather than shifting the burden to the courts to do so when a dissatisfied party challenges an award." *Id.* Finally, the court stressed the parties "should have access to all information that might reasonably affect the potential arbitrator's impartiality. In addition to a professional relationship, this could obviously include, for example, a familial or close social relationship." *Id.* at 637. Although an arbitrator need not disclose trivial relationships or connections, the "conscientious arbitrator should err in favor of disclosure." *Id.*

■■■ Applying the law governing continuances and arbitration, we conclude the trial court's decision to deny the continuance was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. The first factor we consider is the length of time the case has been on file. Although the case had been on file for nearly two years at the time of the confirmation hearing, Faulkner had not updated the disclosure or otherwise taken action to trigger any need to investigate partiality until he made the arbitration award. Con-

sequently, the more relevant starting date is the date the arbitrator first ruled in Cooke's favor, January 31, which means appellants had exactly twenty-two days to investigate the issue of evident partiality. Given the evidence presented at the hearing, we believe this factor clearly weighs in appellants' favor.

■ The second factor considers the materiality and purpose of the discovery sought. When the basis for the requested continuance is "want of testimony," the movant must show (1) the testimony is material, (2) due diligence has been used to obtain the testimony, (3) there is an explanation given for the failure to obtain the testimony, and (4) the testimony cannot be procured from another source. *Duerr v. Brown*, 262 S.W.3d 63, 78 (Tex. App.-Houston [14th Dist.] 2008, no pet.). Appellants seek the testimony of Faulkner and Johnson to determine the scope and nature of their relationship. This evidence is material to appellants' assertion that the arbitration award should be vacated on the ground of "evident partiality." Although appellants did not secure either party's testimony prior to the hearing, we note that it was not unreasonable for appellants to believe the hearing would be rescheduled, particularly since the arbitration award was amended and appellants never received notice of a motion to confirm the amended award. Additionally, it was not unreasonable for appellants to believe that Johnson would be at the hearing, given his role in the arbitration. Once the continuance was denied, appellants tried, unsuc-cessfully, to procure the attendance of both Faulkner and Johnson.[2] Finally, while Johnson's ex-wife briefly testified to Johnson and Faulkner's relationship some four to five years ago, only Faulkner and/or Johnson can provide information regarding the nature and extent of the relationship. The second factor also weighs in appellants' favor.

The third factor considers the diligence of the party seeking continuance. Here, in the three weeks between appellants learning of the arbitrator's ruling and the confirmation hearing, appellants were able to learn information about Johnson and Faulkner relevant to the evident partiality issue. At the hearing, they presented three witnesses, whose testimony was not contradicted by Cooke. They did not, however, have the testimony of Faulkner or Johnson, for reasons set out previously. Given the short amount of time and the information obtained by appellants in that short time, this factor also weighs in appellants' favor.

Finally, we consider what the trial court had before it when making the decision to deny the continuance: appellants were forced to proceed on two motions, one that was not set for hearing (the motion to vacate) and a second that they were not served with until the day of the hearing (motion to confirm amended award). They had less than three weeks from the time they were aware of the arbitrator's ruling to investigate. Nevertheless, appellants were able to produce some evidence that Faulkner failed to disclose a prior relation-

---

**2.** We note that, at the hearing, appellants asked the trial court to order Johnson "down here to testify, or can we have time to get a subpoena on him down here?" Cooke's counsel, Harper, replied, "If they want [Johnson], I'll—I mean, I don't know where he is, but he's in town. He's welcome to come down." With that, the trial court paused the proceedings so that the lawyers could "step out in the hallway and discuss that[.]" Later, appellants' counsel asked whether Harper was having any "success getting [Johnson] here," and Harper replied that Johnson's secretary was getting married and said Johnson was "not in, my guess is that he's already out of town for the wedding. I don't know that. His cell phone's going straight to voice mail and he's not in the office."

ship with Johnson. Johnson's ex-wife testified to a social relationship between Faulkner and Johnson; an expert testified that the information "absolutely" should have been disclosed; and an Oklahoma lawyer testified about his past experience. Cooke contradicted none of this evidence. At the very least, this evidence was sufficient to raise a bona fide question as to whether Faulkner failed to disclose information he had a duty to disclose. The only way that question could be fairly answered was to grant the motion for continuance to allow appellants an adequate opportunity to investigate. Because the trial court did not do so, we conclude it has abused its discretion. We sustain the fourth issue.

Having determined that a continuance should have been granted to allow an adequate opportunity to investigate the evident partiality issue, we do not address appellants' remaining issues. *See* Tex. R. App. P. 47.1. We reverse the trial court's judgment confirming the arbitration award and remand for proceedings consistent with this opinion.