# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00051-CV

**Ashley B. Patten; The Patten Law Firm, P.C.; Patten and Karlseng, P.C.;
Karlseng Law Firm, P.C.; Robert C. Karlseng; Karlseng, LeBlanc & Rich, LLC;
and LeBlanc & Karlseng, P.C., Appellants**

**v.**

**David Christopher Kidd, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-GN-09-000090, HONORABLE JEFF L. ROSE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I ON

After a bench trial on damages, the trial court awarded appellants[1] $400 in damages on their libel per se claim against David Christopher Kidd. They contend that the award was legally and factually insufficient and not based on a proper damages model. They further contend that they were entitled to exemplary damages because Kidd's statements damaged their professional reputations. We affirm.

Appellants include individuals who have past and present business relationships through the appellant law firms and other businesses. Kidd asserts that he has been a partner with

---

[1] Appellants are Ashley B. Patten; the Patten Law Firm, P.C.; Patten and Karlseng, P.C.; Karlseng Law Firm, P.C.; Robert C. Karlseng; Karlseng, LeBlanc & Rich, LLC; and LeBlanc & Karlseng, P.C.

and, most recently, an employee of some appellants. Kidd filed this suit after he was fired by the Patten Law Firm, but later nonsuited his claims.

Appellants counterclaimed, alleging that Kidd made false and/or misleading statements that he knew were false, but which he published anyway. Kidd undisputedly posted an item dated January 11, 2009, on www.ripoffreport.com, a site where consumers can publish comments or articles about their interactions with businesses. Kidd's post became the top hit on a web search for some appellants. Kidd's post included statements about appellants and others that appellants cite as defamatory in their motion for summary judgment, including:

> Consumers, real estate and mortgage professionals are encouraged to not use these companies as they are engaged in fraudulent activities.
>
> Ashley Patten and Robert "Bob" Karlseng lost a 22 + Million dollar lawsuit in 2/2008 for committing fraud against their business partner Jonathan Cooke. In addition to fraud, breach of contract, and conversion all valid transgressions against Mr. Cooke, they have wronged several other business partners during the course of their nine years in the title insurance business.
>
> Currently, they are involved in at least two other lawsuits where they have breached contracts, violated non-competes and literally used the law to steal companies away from their associates and business partners.
>
> The Texas Department of Insurance, the regulatory body for insurance in Texas, has done almost everything they can to run these guys off but they continue to circumvent the law and are still practicing attorneys in Texas. In addition, they have used their deep pockets to manipulate the title insurance rules, and continue to run title operations in Texas and throughout the United States.
>
> They continue to violate employment agreements and push their other business owners into bankruptcy by using State Bar rules in a manner in which they were not meant.
>
> Sending your title business or referring your clients to use these lawyers is a mistake as they are only concerned with money and will not be there in the future. Their bad

2

reputation will ultimately cause your clients and the end consumer to question judgment in the selection process.

Appended to the post is an electronic version of a judgment confirming a $22 million arbitration award to Jonathan Cooke from Patten, Karlseng, Karlseng Law Firm, and Patten & Karlseng for those appellants' fraudulent conduct and breach of contract.[2] Kidd later attempted to have his post removed, but the webmaster declined, stating that removal was against the site's policy. On May 29, 2009, Kidd filed an update in which he noted that the arbitration award had been reversed and remanded for further proceedings,[3] and that Patten and Karlseng "are not judicially guilty of fraud, breach of contract, and conversion, nor are the law firms mentioned in the original report." He stated that

> the Patten Law Firm, Claude Rich, Maverick National Services, and Claude Rich the fee attorney for Capital Title were never accused or sued for Fraud, Breach of Contract or conversion nor are they presently being accused or sued for such things. . . . [T]he author has no knowledge of any cases pending or otherwise that would implicate these parties of any fraud or conversion.

---

[2] The text of the purported judgment appended to the post is identical to the copy of the judgment in *Cooke v. Karlseng*, No. 06-02783-L (193rd Dist. Ct., Dallas County, Feb. 22, 2008), appended to appellants' motion for summary judgment.

[3] The Dallas court of appeals reversed the trial court's confirmation of the arbitration award after concluding that the trial court abused its discretion by denying appellants' motion for continuance to investigate the evident partiality of the arbitrator. *Karlseng v. Cooke*, 286 S.W.3d 51, 58 (Tex. App.—Dallas 2009, no pet.). The court found that the trial court should have granted the continuance after being presented uncontradicted evidence that the arbitrator failed to disclose a prior relationship with Cooke's lead counsel. *Id.* at 52. The court remanded the cause to the trial court for further proceedings. *Id.* at 58.

Kidd also stated that he was aware of only one lawsuit pending against Patten and Karlseng for breach of contract other than the Cooke suit, and that "[t]here is currently no Judicial action pedning [sic] or otherwise that would conclusively implicate the above parties for any wrong doing in any capacity." Appellants argued that these statements disparage them in their professional capacity and are, therefore, libelous per se. The trial court granted summary judgment on liability only, and the case proceeded to a trial on damages before the court.[4]

The trial court heard testimony from Tiffany Stillwell, the Patten Law Firm's director of business development; Ashley Patten, the Patten Law Firm's name partner; Claude Rich, appellants' attorney who testified on behalf of Karlseng, LeBlanc & Rich; and Kidd. After reviewing additional briefing on damages, the trial court ordered that appellants "recover damages from Counter-Defendant, David Christopher Kidd, in the amount of $400.00" without specifying if any of the award was for exemplary damages. No findings of fact or conclusions of law were requested or filed.

Appellants contend on appeal that the evidence showed they deserved more than $400 in total damages. They contend that the evidence is legally and factually insufficient to support this "paltry" award, and argue that the trial court erred by not applying a proper damages model in a libel per se case. They contend that, even if the evidence were legally and factually sufficient to support an award of only $400 in actual damages, Kidd's evident malice would entitle them to an award of exemplary damages.

---

[4] Visiting Judge Gus Strauss presided over the summary judgment on liability, while Judge Jeff Rose presided over the trial on damages.

In a nonjury trial where, as in this case, no findings of fact or conclusions of law are filed or requested, we will infer that the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Because a reporter's record was filed, these implied findings may be challenged for evidentiary sufficiency. *Id.* at 84. The standards of review are the same as those applied to jury findings and a court's express findings of fact. *Wade v. Commission for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.—Houston [1st Dist.] 1997, no writ). When the implied findings of fact are supported by the evidence, we must affirm the judgment on any theory of law applicable to the case. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984).

When reviewing a legal sufficiency finding, we examine the record for evidence supporting the finding that reasonable jurors could believe, disregarding all contrary evidence that reasonable jurors could ignore. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If no evidence supports the finding on an issue on which the appellant bore the burden of proof, we review to see if the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If the proposition contrary to the verdict is established as a matter of law, we must render judgment for that proposition. *Id.*

When reviewing a challenge to the factual sufficiency of the evidence supporting a judgment, we consider and weigh all the evidence, both supporting and against the findings, in order to decide whether the award should be set aside. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). A party attacking the factual sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate on appeal that the adverse finding is against the

5

great weight and preponderance of the evidence. *Dow*, 46 S.W.3d at 242. We can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool*, 715 S.W.2d at 635. We will uphold the award unless it is so against the great weight and preponderance of the evidence that it is manifestly unjust or shocks the conscience. *Id.* We may not substitute our judgment for that of the fact-finder. *Id.* The fact-finder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

With defamatory per se statements, general damages for injury to character, reputation, feelings, mental suffering or anguish, or other wrongs not susceptible to monetary valuation are presumed, although the damages awarded may be nominal. *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 584 (Tex. App.—Austin 2007, pet. denied). General damages include mental anguish and injury to a person's reputation that naturally flow from the libel. *Morrill v. Cisek*, 226 S.W.3d 545, 550 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Once injury to reputation is established, a defamed person may recover general damages without proof of other injury. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984). In a case where the amount of the actual damages is not capable of definite ascertainment, and prima facie liability is established, the determination of the amount is necessarily lodged in the discretion of the fact-finder. *Bradbury v. Scott*, 788 S.W.2d 31, 39 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (citing *Freeman v. Schwenker*, 73 S.W.2d 609, 611 (Tex. Civ. App.—Austin 1934, no writ)).

6

Although appellants' witnesses' testimony centered on reaction to Kidd's post on www.ripoffreport.com, they also testified about emails he sent to firm employees and other actions. After being fired, Kidd filed employment discrimination claims, a complaint with the state bar, and two lawsuits against one or more appellees. He wrote posts on websites and sent numerous emails and faxes to the Patten Law Firm's office. Stillwell testified that Kidd also sent an email to the entire firm stating that he had been wronged by Patten, that their reputation would be stained by employment at the Patten Law Firm, and that they would be unable to obtain employment elsewhere as a result. The court admitted an email from Kidd to Patten and others stating, "I wanted to hurt you in that article, I wanted you to suffer." Patten testified that reputation was critical in his business because regulations require that all title insurance companies must charge the same price. He testified that, whenever a client or potential client researches him or his firm, the www.ripoffreport post comes up and he has to explain it away rather than explain the value of his services. He testified that he cannot measure the damages in money because he does not know how many clients will not return his calls or will move on to another title company. He stated that he could try to hire a public relations firm to make www.ripoffreport.com not the first hit on a web search. He asserted that a lawsuit against www.ripoffreport.com could cost several hundred thousand dollars.

Claude Rich testified that he had to field questions from family, friends, current customers and clients, and former customers and clients about the www.ripoffreport.com post. He said that someone reads the post every day. He testified that his current law firm lost a relatively large client as a result of the post. He said that he explained to the client that Kidd had filed false and misleading information to injure anyone associated with Karlseng and Patten, and assured the

7

client that the post should not affect their business relationship. The client's assistant later told Rich that the client could not put his reputation in question by continuing to do business with him. Rich believed that Kidd's statements were the cause. Rich testified that the loss was more than $10,000 per month. On cross-examination, Rich conceded that the client had not specifically told him that the post was the reason he was no longer going to use the firm. He also acknowledged that the www.ripoffreport.com post referred to an arbitration award against some appellants that was appealed and affirmed by the trial court, but he was not sure of the current status of that judgment. He also acknowledged that there was a finding of breach of contract by Karlseng and Patten as well as an indication of fraud.

Kidd testified that he asserted in the www.ripoffreport.com post that appellants committed theft against Cooke because he believed that appellants had stolen assets from him during business dealings, and it was "safe to assume" that Cooke's assets were stolen too. He conceded that the trial court did not specifically find theft, but argued that it could be "covered" by the fraud finding. He was not certain whether there was a finding of conversion (there was not). Kidd testified that in his post he named several legal entities in addition to the defendants in the Cooke suit because Patten and Karlseng have "a long history of creating and dissolving legal entities to avoid prosecution in lawsuits for fraud and various other things." He felt it important for the public to know of the various entities that were formed by the individuals even though they were not parties to the Cooke judgment. He testified that he was sure that a suit against www.ripoffreport.com would be "cost prohibitive."

Appellants have not shown that the great weight and preponderance of the evidence shows that the damage award is so inadequate that it is manifestly unjust or shocks the conscience. Appellants cite damage awards in cases in which testimony showed that defamatory communications caused questions to be raised and concerned phone calls to be made about the subject matter of the communications. *Morrill*, 226 S.W.3d at 550-51 ($25,000 award upheld); *Bradbury*, 788 S.W.2d at 34 ($40,000 award upheld). Those cases do not control here, however, because appellants are asking us to find that the trial court erred in its damage award. That one fact-finder's five-figure damage award did not shock one appellate court's conscience does not mean that this fact-finder's three-figure damage award must shock the conscience in this case. The summary judgment conclusion that Kidd is "liable" does not mean that he is responsible for every loss appellants suffered. Although damages from libel per se are presumed and need not be specifically proven, there was no evidence of a discrete $400 damage to appellants. There was not clear testimony regarding damages to each appellant. There was general testimony that some appellants endured multiple inquiries about and explanations of the www.ripoffreport.com post, but there was almost no evidence of quantified damages attributed to Kidd's writing the post. Rich testified that Kidd's post caused a $10,000/month client to change title companies. However, on cross examination, Rich admitted that he had no direct knowledge that Kidd's writings caused that client to move its business. Further, it is not clear whether the inquiries and loss of business were prompted by Kidd's comments or the text of the Dallas district court's order confirming the arbitration award including the $22 million judgment for breach of contract and fraud. Because the court has found Kidd liable for libel per se, appellants are entitled to at least nominal damages. *Texas Disposal Sys.*, 219 S.W.3d

at 584. Beyond that, because the damage caused by Kidd to appellants' psyches, reputations, and businesses is difficult to quantify, determination of the amount of actual damages is necessarily lodged in the discretion of the fact-finder. *Bradbury*, 788 S.W.2d at 39; *Freeman*, 73 S.W.2d at 611. Appellants have not demonstrated that the trial court's determination was error.

Appellants contend that the trial court erred in not applying a proper damages model in a libel per se cause of action. They do not offer such a model except to assert that $57.15 per appellant is paltry. They concede that the amount of their damages is unquantifiable, but contend that the court misquantified it. Appellants have not shown error.

Appellants contend that they clearly established that Kidd acted with malice, entitling them to exemplary damages. The record does not reflect that appellants called to the trial court's attention the alleged omission[5] of exemplary damages through post-judgment motion such as a motion to modify, correct, or reform the judgment, a motion for new trial, or a request for findings of fact and conclusions of law. Appellants failed to preserve this error for review on appeal. *See Briggs Equip. Trust v. Harris County Appraisal Dist.*, 294 S.W.3d 667, 674 (Tex. App.—Houston [1st Dist.] 2009, pet. filed); *see also Air Park-Dallas Zoning Comm. v. Crow Billingsley Airpark,*

---

[5] The trial court awarded "damages." It is not clear whether this award was limited to actual damages or also included exemplary damages. There are no separate findings of fact and conclusions of law clarifying that issue. Regardless, the amount of exemplary damages is largely within the trial court's discretion. *Ethicon, Inc. v. Martinez*, 835 S.W.2d 826, 835 (Tex. App.—Austin 1992, writ denied). *But see* Tex. Civ. Prac. & Rem. Code Ann. § 41.008 (West Supp. 2009), § 41.010 (West 2008). Even if the trial court awarded a total of $400 in actual and exemplary damages and that decision were preserved for appeal, we conclude that this record does not require that we reverse that award.

*Ltd.*, 109 S.W.3d 900, 912 (Tex. App.—Dallas 2003, no pet.); *WLR, Inc. v. Borders*, 690 S.W.2d 663, 668-69 (Tex. App.—Waco 1985, writ ref'd n.r.e.); *see generally* Tex. R. App. P. 33.1.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 18, 2010