**REVERSE and REMAND; and Opinion Filed August 14, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00206-CV

**H. JONATHAN COOKE, INDIVIDUALLY AND ON BEHALF OF ESCROW PARTNERS DALLAS, L.P.; ESCROW PARTNERS DALLAS, GP, INC.; ESCROW PARTNERS HOUSTON, L.P.; ESCROW PARTNERS HOUSTON, GP, INC.; ESCROW PARTNERS AUSTIN, L.P.; ESCROW PARTNERS AUSTIN, GP, INC.; ESCROW PARTNERS SAN ANTONIO, L.P.; ESCROW PARTNERS SAN ANTONIO, GP, INC.; TITLE PARTNERS, L.L.P.; NORTH AMERICAN MANAGEMENT, L.L.P.; TJ PARTNERS I, LLC; AND TJ PARTNERS II, LLC, Appellants**

**V.**

**ROBERT C. KARLSENG; KARLSENG LAW FIRM, P.C.; ASHLEY BRIGHAM PATTEN; PATTEN & KARLSENG LAW FIRM, P.C.; JACQUES YVES LEBLANC; AND LEBLANC, PATTEN AND KARLSENG LAW FIRM, P.C., Appellees**

**AND**

**ROBERT C. KARLSENG; KARLSENG LAW FIRM, P.C.; ASHLEY BRIGHAM PATTEN; PATTEN & KARLSENG LAW FIRM, P.C.; JACQUES YVES LEBLANC; AND LEBLANC, PATTEN AND KARLSENG LAW FIRM, P.C., Cross-Appellants**

**V.**

**H. JONATHAN COOKE, INDIVIDUALLY AND ON BEHALF OF ESCROW PARTNERS DALLAS, L.P.; ESCROW PARTNERS DALLAS, GP, INC.; ESCROW PARTNERS HOUSTON, L.P.; ESCROW PARTNERS HOUSTON, GP, INC.; ESCROW PARTNERS AUSTIN, L.P.; ESCROW PARTNERS AUSTIN, GP, INC.; ESCROW PARTNERS SAN ANTONIO, L.P.; ESCROW PARTNERS SAN ANTONIO, GP, INC.; TITLE PARTNERS, L.L.P.; NORTH AMERICAN MANAGEMENT, L.L.P.; TJ PARTNERS I, LLC; AND TJ PARTNERS II, LLC, Cross-Appellees**

---

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-06-02783-L**

---

## MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Pedersen, III

This is a permissive interlocutory appeal of the trial court's February 6, 2018 Second Amended Order Granting Defendants' Motion for Summary Judgment on Defendants' Illegality and Business Judgment Rule Defenses and Amended Order on Defendants' Plea to the Jurisdiction and Traditional Motion for Partial Summary Judgment Related to the Business Entities' Claims (the Order). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d). The trial court granted the parties' agreed motion for this appeal, concluding that the Order "involves controlling questions of law about which there is a substantial ground for difference of opinion," *id.* § 51.014(d)(1), and that an immediate interlocutory appeal "may materially advance the ultimate termination of the litigation," *id.* § 51.014(d)(2). Those controlling questions take the form of four issues. Appellants[1] contend the trial court erroneously granted summary judgment in favor of the cross-appellants on two affirmative defenses: illegality and the business judgment rule. Cross-appellants[2] argue the trial court erroneously denied their plea to the jurisdiction and denied their summary judgment motion on a third affirmative defense, limitations. We reverse the trial court's Order in part, and we dismiss appellants' claims that are subject to this appeal.

## BACKGROUND[3]

In 1999, Cooke and Karlseng went into business together to provide title closing services to lenders and real estate companies. Cooke and Karlseng formed a partnership, Title Partners, L.L.P, each with a fifty-percent ownership interest, to supervise the day-to-day management of the business. Karlseng is a licensed attorney and became a licensed escrow agent; Cooke, who is not

---

[1] The appellants/cross-appellees include: Escrow Partners Dallas, L.P.; Escrow Partners Dallas, Gp, Inc.; Escrow Partners Houston, L.P.; Escrow Partners Houston, Gp, Inc.; Escrow Partners Austin, L.P.; Escrow Partners Austin, Gp, Inc.; Escrow Partners San Antonio, L.P.; Escrow Partners San Antonio, Gp, Inc.; Title Partners, L.L.P.; North American Management, L.L.P.; Tj Partners I, LLC; and Tj Partners II, LLC (the Business Entities) and H. Jonathan Cooke, who appeals individually and on behalf of the Business Entities. We will refer to Cooke and the Business Entities collectively as the appellants.

[2] The appellees/cross-appellants include: Robert C. Karlseng; Karlseng Law Firm, P.C.; Ashley Brigham Patten; Patten & Karlseng Law Firm, P.C.; Jacques Yves Leblanc; and Leblanc, Patten and Karlseng Law Firm, P.C. We will refer to these parties as the cross-appellants.

[3] This is the fourth appeal in this case. We adopt the relevant factual background statement from the first appeal in 2009, *Karlseng v. Cooke*, 286 S.W.3d 51, 53–54 (Tex. App.—Dallas 2009, no pet.), and we add facts concerning subsequent events as necessary to resolve this appeal.

an attorney, handled marketing duties. Over the next five years, Cooke and Karlseng expanded their business operations to several Texas cities and formed other partnerships with attorneys Ashley Brigham Patten and Jacques Yves LeBlanc. The partners split profits according to the terms of the partnership agreements.

In 2004 and 2005, the Texas Department of Insurance (TDI) conducted an investigation of the partnerships to determine whether a licensed attorney was supervising the work of certain employees who were closing real estate transactions. Although appellants' counsel advised that the business relationship was legal, he also suggested that switching to a law firm structure could expedite a resolution with TDI. Thereafter, Karlseng, Patten, and LeBlanc created the defendant law firms and transferred partnership assets and business to the new firms without paying Cooke or observing the requirements of the partnership agreements when transferring these assets. The parties disputed whether Cooke was consulted on this change. The parties unsuccessfully attempted to negotiate a settlement to compensate Cooke either through a buyout or employment/consulting contract. Cooke claimed he was then fired, but appellants asserted he quit.

In March 2006, Cooke filed a lawsuit alleging appellants tortiously transferred partnership assets to new professional corporations, owned solely by the individual appellants, and falsely told Cooke that the partnerships needed to shut down due to certain state regulations. The partnership agreements provided for arbitration, and appellants filed a motion to compel arbitration. The trial court granted the motion and ordered the parties to arbitration.

A contested arbitration hearing was held in December 2007. The arbitrator ruled in Cooke's favor and awarded him more than $22 million. The trial court affirmed the arbitration order, but this Court vacated the award and remanded the cases for further proceedings. *Karlseng v. Cooke*, 346 S.W.3d 85, 100 (Tex. App.—Dallas 2011, no pet.).

Over subsequent years, the case has been litigated in depth. Claims and defenses have been added, and a number of legal theories have been raised in response. This permissive appeal turns on four of those theories.

(1) Cross-appellants moved for summary judgment contending that Cooke's claims were barred because the partnership agreements structuring the operations of the Business Entities called for Cooke to share in the profits of the enterprise. According to title insurance law and regulations, sharing profits with a party not licensed as an escrow agent or an attorney is illegal. The trial court granted the motion. In their first issue, appellants challenge that ruling.

(2) Cross-appellants also moved for summary judgment arguing that Cooke's claims were barred because the attorney-partners' decision to move the illegal operation to one operating legally within law firms was protected by the Business Judgment Rule. The trial court granted this motion as well. Appellants' second issue challenges that ruling.

(3) Cross-appellants filed special exceptions and a plea to the jurisdiction arguing that all claims within Cooke's Second Amended Petition, which were pleaded as his own individual claims, belonged to the Business Entities. Thus, they contended, Cooke lacked standing to bring the claims. The trial court granted the special exceptions and allowed Cooke to replead. His Third Amended Petition added the twelve Business Entities as plaintiffs and—for each of Cooke's pleaded claims—stated that the claim was now being brought individually and derivatively on behalf of the Business Entities. Cross-appellants filed a second plea to the jurisdiction, again arguing that Cooke lacked standing to pursue his individual claims. The trial court denied this second plea, and that ruling underlies cross-appellants' first issue.

(4) Cross-appellants moved for summary judgment arguing that all of the Business Entities' claims were barred by their respective statutes of limitation.[4] The trial court denied this motion; cross-appellants' second issue challenges that ruling.

After some time, the parties agreed to request this permissive appeal, and the trial court granted their motion. Following jurisdictional briefing, this Court concluded that it had jurisdiction to hear the appeal.

## THE CROSS-APPEAL

We begin with cross-appellants' issues because the plea to the jurisdiction addresses the threshold issue of standing and the limitations issue addresses which parties are properly before the trial court.

### Plea to the Jurisdiction on Standing

"A plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson County*, 369 S.W.3d 137, 149 (Tex. 2012). Cross-appellants' specific challenge was to Cooke's standing, which is a question of law that we review de novo. *Id.* at 150. Standing is a constitutional prerequisite to suit, and a court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *Id.* A party's standing to sue is not presumed; it must be proved. *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016). The plaintiff bears the burden of affirmatively demonstrating the trial court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

The test for standing in Texas requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Id.* at 154. Our analysis begins by determining the nature of the alleged wrong. *Linegar*, 495 S.W.3d at 279. We assess standing on a claim-by-claim basis. *Id.* The plaintiff must plead facts demonstrating that he suffered the injury alleged. *Heckman*, 369 S.W.3d at 155.

---

[4] The limitations motion was titled Motion for Summary Judgment on the Business Entities' Claims.

Cross-appellants' plea to the jurisdiction was directed at the individual claims brought by Cooke in his 2006 original petition and expanded in his amended petitions. The plea alleged that Cooke's individual claims pleaded only an injury to the Business Entities and thus did not belong to him individually. Cooke was a limited partner of the partnerships in 2006, but "[a] limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest." *Hall v. Douglas*, 380 S.W.3d 860, 873 (Tex. App.—Dallas 2012, no pet.).

In this Court, Cooke acknowledges that his original claim for breach of fiduciary duty—as well as his later-added claims for breach of contract, conversion, shareholder oppression, unjust enrichment, and money had and received—were "premised on Appellees' decision to stop sharing partnership proceeds with Mr. Cooke, move all of the assets and business goodwill of the Title Businesses to law firms without paying fair market value to Cooke, and mislead him on their actions." Thus, he concedes, those claims were rooted in "harm done to Mr. Cooke as a partner, [by] eliminating the value of his partnership interest." It is readily apparent, therefore, that Cooke lacked standing to bring these claims individually.[5] *Id.*

Cooke contends, however, that his 2006 claim for fraud—and his later-added claim for negligent misrepresentation—presented claims of individual harm distinct from the partnership. He asserts that cross-appellants falsely told him that the Business Entities needed to be shut down, thereby "misleading [him] into thinking that he would be fully compensated for the value of the partnership business that they took to their law firms." He contends that he was kept away from the TDI audit, not informed of the "real reasons" for moving operations to the law firms, and "strung along" to continue managing the companies. He argues that he relied on cross-appellants'

---

[5] Although Cooke makes these concessions, he alleges that he had standing in 2006 to bring these claims as derivative claims. We address that allegation below.

misrepresentations and omissions "on the understanding that he would receive fair compensation for the conversion of the business to the law firms."

Cross-appellants challenge both Cooke's factual and legal arguments related to the fraud claim. We must construe the plaintiff's pleadings liberally, taking all factual assertions as true and looking to the plaintiff's intent. *Heckman*, 369 S.W.3d at 150. Cooke's pleadings, not his factual representations on appeal, control our inquiry. *Id.* And the critical inquiry for our standing analysis is the injury Cooke pleaded for his fraud claim. In his original petition, Cooke alleged that cross-appellants assured him "that the assets of the partnerships would be purchased by new entities for fair market value and that Mr. Cooke would be fully compensated for the value of his partnership shares." Cooke alleged that those representations were false and that the individual cross-appellants "have paid no real compensation to [him] for their theft of the partnership assets and businesses." In his first amended petition, Cooke repeated these allegations, adding only that the cross-appellants "did not pay fair market value for the assets," as they falsely represented they would. "Instead, they intentionally and deliberately paid Mr. Cooke nothing for his assets." Cooke never pleaded separate, different injuries for his fraud or negligent misrepresentation claims. Instead, as for all of his claims, he complained that he was not compensated for the value of his partnership shares and for the partnerships' assets and businesses. We do not question that Cooke felt the economic impact of the losses he alleges. However, "[t]hese damages, although cast as personal damages, belong to the partnership[s] alone." *Hall*, 380 S.W.3d at 873.

We conclude that Cooke's fraud and negligent misrepresentation claims did not allege an individual injury. Accordingly, all claims that Cooke filed in 2006—and all claims that he added later as individual claims—alleged injuries that legally belonged to the Business Entities.

But Cooke argues that he had standing in 2006 to assert any claims that belonged to the Business Entities.[6] He contends that at that time he could "proceed with individual or derivative claims on behalf of all of these entities seeking recovery for the lost value of his interest." We disagree.

Cooke's argument is rooted in his interpretation of this statutory provision:

> If justice requires . . . a derivative proceeding brought by a shareholder of a closely held corporation may be treated by a court as a direct action brought by the shareholder for the shareholder's own benefit.

TEX. BUS. ORGS. CODE ANN. § 21.563(c)(1) (formerly Tex. Bus. Corp. Act, art. 5.14(L)). Cooke argues that this statute creates an identity between his individual claims and any derivative claims, because the latter may be treated as "direct" actions. He states that "[a]lthough it is true that the claims are injuries to the organization and thus derivative, the statute itself makes a clear distinction between this direct procedure and a typical derivative proceeding." And he goes on to posit that, pursuant to this statute, "the question is *not* whether the injuries are to Cooke or to the corporation. It is whether he can sue *individually* for those corporate injuries *as though they were personal*." (Emphasis in original.) He concludes that section 21.563 permits such a procedure. But it does not.

Section 21.563 does not turn a derivative claim into an individual claim. This Court has concluded that although the statute permits a court to "treat a derivative action as a direct action by a shareholder, the claims remain vested in the corporation." *2055 Inc. v. McTague*, No. 05-08-01057-CV, 2009 WL 2506342, at *8 (Tex. App.—Dallas Aug. 18, 2009, no pet.) (mem. op.). Rather than transforming the nature of the plaintiff's claim, the statute permits the trial court to award damages in a derivative proceeding directly to the shareholder "if necessary to protect the interests of creditors or other shareholders of the corporation." BUS. ORGS. § 21.563(c)(2).

---

[6] Cooke also contends he had capacity in 2006 to bring all of the claims belonging to the Business Entities. We need not address Cooke's capacity to resolve this issue, so we do not address it.

Accordingly, "[a] trial court's decision to treat an action as a direct action under Section 21.563(c) so as to allow recovery to be paid directly to a shareholder plaintiff, as opposed to the corporation, does not mean that the action is no longer a derivative proceeding." *Swank v. Cunningham*, 258 S.W.3d 647, 665 (Tex. App.—Eastland 2008, pet. denied).

Although Cooke contends that he was able to bring a derivative action in 2006, the fact remains that he did not. And despite his assertion to the contrary, the question before us *is* whether the injuries pleaded were to Cooke or to the Business Entities. We have concluded that the injuries were to the Business Entities.

We conclude Cooke lacked standing to assert his individual claims. If a plaintiff lacks standing to assert a claim, the court lacks jurisdiction over that claim and must dismiss it. *Heckman*, 369 S.W.3d at 150. The trial court should have dismissed Cooke's individual claims. It erred by denying cross-appellants' plea to the jurisdiction. We sustain cross-appellants' first cross-point.

### Summary Judgment on Limitations

In their second cross-point, cross-appellants contend that the trial court erred in denying their summary judgment motion on limitations. We apply well-known standards in our review of traditional summary judgment motions. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We consider the evidence in the light most favorable to the nonmovant. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Within the framework of these standards, we review the summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Cross-appellants argue that the derivative claims brought by Cooke on behalf of the Business Entities are barred by the relevant statutes of limitations. Cooke filed the derivative claims in his Third Amended Petition on February 24, 2014. That petition alleged that the underlying business relationship between Cooke and Karlseng began in 1999. The allegations underlying all of Cooke's claims took place during 2005 and 2006. And Cooke first filed suit against appellants in 2006. Thus, cross-appellants urge that all of Cooke's derivative claims accrued by 2006 and are barred by their respective four-year or two-year statutes of limitations.[7]

Cooke has not challenged cross-appellants' allegations concerning when claims accrued either in his response to the motion below or in this Court. Instead, Cooke relies on the doctrine of relation back, arguing that all of his derivative claims relate back to his original filing in 2006. The relevant statute provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

CIV. PRAC. & REM. § 16.068. Cooke argues that the derivative claims are not based on a new, distinct, or different transaction or occurrence, and thus section 16.068 operates to prevent the summary judgment on limitations.[8] We agree that Cooke's derivative claims rely upon the same facts as the individual claims he pleaded in 2006. Indeed Cooke added his derivative claims by noting for each individual claim that he "asserts this claim both individually and derivatively on

---

[7] Four-year statutes govern limitations for claims of fraud (CIV. PRAC. & REM. § 16.004(a)(4)), breach of fiduciary duty (*id.* § 16.004(a)(5)), breach of contract (*id.* § 16.051), and shareholder oppression (*id.* § 16.051). Two-year statutes govern claims for negligent misrepresentation (*HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998)), conversion (CIV. PRAC. & REM. § 16.003(a)), money had and received (*id.* § 16.003(a)), and unjust enrichment (*HECI Expl.*, 982 S.W.2d at 885). Claims for aiding and abetting and civil conspiracy share a limitations period with their underlying tort. *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, No. 17-0630, __S.W.3d ___, 2019 WL 1495211, at *5 (Tex. Apr. 5, 2019) (addressing conspiracy). For purposes of general discussion in this case, we will treat these derivative torts as if they are governed by the longest statute governing the underlying claims, four years.

[8] Based on this argument, Cooke relies heavily on *Chien v. Chen*, 759 S.W.2d 484 (Tex. 1988). Because we resolve the relation-back issue on different grounds, *Chien* is not helpful to our analysis.

behalf of each of the entities named in the caption." Cooke also contends that cross-appellants have had ample notice of his claims and the facts underlying them, so the derivative claims did not operate as a surprise.

However, the Third Amended Petition added twelve new plaintiffs to the case. As cross-appellants point out, "[o]rdinarily, an amended pleading adding a new party does not relate back to the original pleading." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004).

Cross-appellants also argue that because Cooke lacked standing when he filed his original claims, "there was nothing to which he could relate back." This argument is dispositive of the limitations motion. "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman*, 369 S.W.3d at 150. We have concluded that Cooke lacked standing to assert his original individual claims. For that reason, the trial court never obtained jurisdiction over his claims. *See id.* The doctrine of relation back cannot create jurisdiction where none existed. *Goss v. City of Houston*, 391 S.W.3d 168, 175 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (because trial court lacked jurisdiction over plaintiff's TCHRA suit, original petition was nullity and could neither toll limitations nor create subject matter jurisdiction over plaintiff's amended petition); *SJW Prop. Commerce, Inc. v. Sw. Pinnacle Props., Inc.*, 328 S.W.3d 121, 145 (Tex. App.—Corpus Christi 2010, pet. denied) (subsequent pleadings cannot give trial court jurisdiction over new parties retroactive to original filing of suit) (citing *Armes v. Thompson*, 222 S.W.3d 79, 84 (Tex. App.—Eastland 2006, no pet.)); *see also Burt v. City of New Boston, Tex.*, No. 5:05CV33, 2006 WL 722102, at *4 (E.D. Tex. Mar. 17, 2006) (amended petition does not relate back to original petition when original petition did not give court jurisdiction to hear case).

The parties cite a number of cases concerning relation back that involve the capacity of the plaintiff. The Texas Supreme Court has clarified the distinction between capacity and standing, stating that: "'A plaintiff has standing when it is personally aggrieved, regardless of whether it is

acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy.'" *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005) (quoting *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist*., 925 S.W.2d 659, 661 (Tex. 1996)). The Supreme Court acknowledged in *Lovato* that sometimes the distinction between these concepts has been "blurred." *Id.* at 848, n.1. This is certainly true in cases involving later-added claims. But *Lovato*, a survival action, dealt with such claims, and its analysis focused first on the existence of standing at the time of filing. *Id.* at 848. The court concluded that "because the [original] pleadings in this case alleged that the defendants' negligent conduct injured [the decedent], her estate had standing to pursue a claim." *Id.* at 850. Defects of capacity, on the other hand, could be remedied later in the litigation. *Id.* at 853 ("Under those circumstances, the estate had standing and was ultimately represented by a person with capacity to pursue the claim on its behalf."). [9]

Cooke's problem is one of standing, not capacity. *See Hall*, 380 S.W.3d at 873. Unlike the plaintiff in *Lovato*, who pleaded an injury to the estate, Cooke pleaded only individual injury. But any injuries he identified were not his own; they were injuries to the Business Entities. Cooke could not simply "change hats" and create jurisdiction in the trial court long after limitations had run. We conclude his derivative claims cannot relate back. Thus, those claims are barred by their respective statutes of limitations, and the trial court should have granted cross-appellant's motion for summary judgment. We sustain the cross-appellants' second issue.

---

[9] The Supreme Court affirmed the Austin Court of Appeals' judgment in *Lovato*, although by characterizing the plaintiff's error as "defective capacity," *id.* at 851, the court implicitly corrected the court of appeals, which had concluded that the plaintiff had cured her "defective standing." 113 S.W.3d 45 (Tex. App.—Austin 2003).

**REMAINING ISUES AND CLAIMS**

Our analysis of cross-appellants' plea to the jurisdiction has resolved all of Cooke's individual claims against him. Likewise our analysis of cross-appellants' motion for summary judgment on limitations has resolved Cooke's derivative claims against him and the Business Entities. We need not address appellants' issues regarding the trial court's summary judgments on illegality or the business judgment rule.

Although some briefing in this case has suggested that Cooke's derivative claims related to the tangible assets of the Business Entities could survive this appeal, we disagree. Cross-appellants' motion for summary judgment addressed all of the Business Entities' claims. The trial court's Order does not except the tangible-assets claims from the reach of the limitations motion. And cross-appellants' jurisdictional briefing in this Court asserted: "Resolution of the Standing and Limitations Orders in the Defendants' favor would resolve all of the Plaintiffs' claims against the Defendants." We conclude that those derivative claims related to the Business Entities' tangible assets are included within the bar of limitations resolved by cross-appellants' second issue. There is no need to remand them.

The single exception to our resolution of all of Cooke's derivative claims is based on the trial court's Order, which specifically states that it "does not address any derivative claims that Plaintiff H. Jonathan Cooke has asserted derivatively on behalf of TJ Partners I, LLC and TJ Partners II, LLC." Those claims apparently remain pending below, so we remand this case for further proceedings consistent with this opinion.

**CONCLUSION**

We reverse the trial court's Order denying cross-appellants' plea to the jurisdiction and summary judgment on limitations. We dismiss Cooke's individual claims for lack of jurisdiction, and we dismiss Cooke's derivative claims (other than those specifically excepted by this opinion) because they are barred by limitations. We render judgment that Cooke and the Business Entities take nothing on all claims subject to this appeal.


/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE


180206F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

H. JONATHAN COOKE, INDIVIDUALLY AND ON BEHALF OF ESCROW PARTNERS DALLAS, L.P.; ESCROW PARTNERS DALLAS, GP, INC.; ESCROW PARTNERS HOUSTON, L.P.; ESCROW PARTNERS HOUSTON, GP. INC.; ESCROW PARTNERS AUSTIN, L.P.;  ESCROW PARTNERS AUSTIN, GP, INC.; ESCROW PARTNERS SAN ANTONIO, L.P.; ESCROW PARTNERS SAN ANTONIO, GP, INC.; TITLE PARTNERS, L.L.P.; NORTH AMERICAN MANAGEMENT, L.L.P.; TJ PARTNERS I, LLC; AND TJ PARTNERS II, LLC, Appellants/Cross-Appellees

No. 05-18-00206-CV        V.

ROBERT C. KARLSENG; KARLSENG LAW FIRM, P.C.; ASHLEY BRIGHAM PATTEN; PATTEN & KARLSENG LAW FIRM, P.C.; JACQUES YVES LEBLANC; AND LEBLANC, PATTEN AND KARLSENG LAW FIRM, P.C., Appellees/Cross-Appellants

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-06-02783-L.
Opinion delivered by Justice Pedersen, III. Justices Brown and Schenck participating.

In accordance with this Court's opinion of this date, the order of the trial court is **REVERSED** in part. We **DISMISS** the individual claims of appellant H. JONATHAN COOKE, and we **DISMISS** the claims brought by H. JONATHAN COOKE on behalf of ESCROW PARTNERS DALLAS, L.P.; ESCROW PARTNERS DALLAS, GP, INC.; ESCROW

PARTNERS HOUSTON, L.P.; ESCROW PARTNERS HOUSTON, GP. INC.; ESCROW PARTNERS AUSTIN, L.P.;  ESCROW PARTNERS AUSTIN, GP, INC.; ESCROW PARTNERS SAN ANTONIO, L.P.;  ESCROW PARTNERS SAN ANTONIO, GP, INC.; TITLE PARTNERS, L.L.P.; and NORTH AMERICAN MANAGEMENT, L.L.P.

This cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellees ROBERT C. KARLSENG; KARLSENG LAW FIRM, P.C.; ASHLEY BRIGHAM PATTEN; PATTEN & KARLSENG LAW FIRM, P.C.; JACQUES YVES LEBLANC; and LEBLANC, PATTEN AND KARLSENG LAW FIRM, P.C. recover their costs of this appeal from appellant H. JONATHAN COOKE, INDIVIDUALLY and on behalf of ESCROW PARTNERS DALLAS, L.P.; ESCROW PARTNERS DALLAS, GP, INC.; ESCROW PARTNERS HOUSTON, L.P.; ESCROW PARTNERS HOUSTON, GP. INC.; ESCROW PARTNERS AUSTIN, L.P.;  ESCROW PARTNERS AUSTIN, GP, INC.; ESCROW PARTNERS SAN ANTONIO, L.P.;  ESCROW PARTNERS SAN ANTONIO, GP, INC.; TITLE PARTNERS, L.L.P.; NORTH AMERICAN MANAGEMENT, L.L.P.; TJ PARTNERS I, LLC; AND TJ PARTNERS II, LLC.


Judgment entered this 14th day of August, 2019.