# United States Court of Appeals for the Federal Circuit

---

**CEATS, INC.,**
*Plaintiff-Appellant,*

v.

**CONTINENTAL AIRLINES, INC., ALASKA AIRLINES, INC., HORIZON AIR INDUSTRIES, INC., DELTA AIR LINES, INC., JETBLUE AIRWAYS CORPORATION, UNITED AIR LINES, INC., VIRGIN AMERICA, INC., US AIRWAYS, INC., TICKETMASTER, LLC, TICKETSNOW.COM, INC.,** AND **LIVE NATION WORLDWIDE, INC.,**
*Defendants-Appellees,*

AND

**AIRTRAN AIRWAYS, INC.,**
*Defendant.*

---

2013-1529

---

Appeal from the United States District Court for the Eastern District of Texas in No. 10-CV-120, Judge Michael H. Schneider.

---

Decided: June 24, 2014

---

DEAN A. DICKIE, Miller, Canfield, Paddock, and Stone P.L.C., of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief was RYAN C. WILLIAMS. Of counsel on the brief were GEORGE L. HAMPTON IV and COLIN C. HOLLEY, HamptonHolley LLP, of Corona del Mar, California.

MARK A. LEMLEY, Durie Tangri LLP, of San Francisco, California, argued for defendants-appellees. With him on the brief were CLEMENT S. ROBERTS and ZAC A. COX.

———————

Before PROST, * *Chief Judge*, RADER,** and O'MALLEY, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

CEATS, Inc. ("CEATS") brought this patent infringement suit against Continental Airlines, Inc.; Alaska Airlines, Inc.; Horizon Air Industries, Inc.; Delta Airlines, Inc.; Jetblue Airways Corp.; United Airlines, Inc.; Virgin America, Inc.; US Airways, Inc.; Ticketmaster, LLC.; Ticketsnow.com, Inc.; Live Nation Worldwide, Inc.; and Airtran Airways, Inc. (collectively, "Continental") in the United States District Court for the Eastern District of Texas. After the parties failed to reach a settlement during court ordered mediation, the case went to trial where a jury found that CEATS's patents were infringed, but invalid. We affirmed the jury's finding of invalidity in a prior appeal. *CEATS, Inc. v. Continental Airlines, Inc.* ("*CEATS I*"), 526 F. App'x 966 (Fed. Cir. Apr. 26, 2013).

———————

\*    Sharon Prost assumed the position of Chief Judge on May 31, 2014.
\*\*    Randall R. Rader vacated the position of Chief Judge on May 30, 2014.

While its first appeal was pending, CEATS filed a motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b) (2012) ("Rule 60(b)") based on an alleged relationship between the court-appointed mediator and the law firm representing most of the accused infringers. This alleged relationship was brought to light in an unrelated case ("the *Karlseng* litigation"). After we affirmed the invalidity of CEATS's patents in *CEATS I*, the district court denied CEATS's Rule 60(b) motion. This appeal followed.

Although we disagree with the district court's finding that the mediator had no duty to disclose his dealings with one of the firms involved in the litigation, we nonetheless agree that relief from judgment under Rule 60(b) was not warranted. *See CEATS, Inc. v. Continental Airlines ("Rule 60(b) Order"), Inc.*, No. 6:10-cv-120, ECF No. 1101, slip op. at 16 (E.D. Tex. June 28, 2013). Therefore, *we affirm*.

I. BACKGROUND

A. The District Court Trial and Mediation

On April 5, 2010, CEATS sued Continental in the United States District Court for the Eastern District of Texas for infringement of four patents. The district court ordered the parties to participate in mediation and appointed former Magistrate Judge Robert Faulkner as the mediator on September 28, 2010. The parties conducted two mediation sessions before Faulkner—one on June 21, 2011 and another on June 30, 2011.[1] Because the parties failed to reach a settlement during mediation, the matter

---

[1] The parties refer to the mediator as Judge Faulkner, presumably to provide due respect to his former position. Because we draw distinctions between the role of a mediator and that of a judge, we refer to former Judge Faulkner as simply Faulkner, to avoid confusion.

proceeded to trial. Thomas Melsheimer, a partner at Fish & Richardson P.C. ("Fish"), served as lead trial counsel. Fish represented some, but not all, of the accused infringers before the trial court. During the 8-day jury trial, the parties conducted further mediation sessions, but again failed to reach a settlement. On March 21, 2012, the jury found CEATS's patents infringed, but invalid.

## B. The *Karlseng* Litigation

In an unrelated case that began three years before CEATS filed its complaint in this case, Fish represented a party in a partnership dispute before a Texas state court. After the parties agreed to arbitration, the state court appointed Faulkner to serve as the Judicial Arbitration and Mediation Service ("JAMS") arbitrator. *See Karlseng v. Cooke* ("*Karlseng I*"), 286 S.W. 3d 51, 53 (Tex. App. 2009). Pursuant to JAMS rules, Faulkner disclosed that he previously had participated in arbitrations and mediations with the named Fish attorneys, but disclosed no other contacts with them. Four days after this disclosure, Brett Johnson, a partner at Fish, made his first appearance in the case. Faulkner made no changes to his general disclosure form when Johnson entered his appearance. *See id.* During the arbitration, Faulkner also acted as if he had not met Johnson previously. In January 2008, Faulkner issued a ruling in favor of Fish's client for $22 million, including $6 million in attorney's fees. After learning that Faulkner and Johnson were, in fact, previously acquainted, opposing counsel asked to conduct discovery regarding the nature of their relationship. The state court denied that request and confirmed the award on February 22, 2008. *See id.* at 54.

On appeal, the Texas appellate court found that the district court abused its discretion by refusing to grant a continuance to conduct discovery because there was sufficient evidence of a prior relationship between Faulkner and Johnson to warrant further investigation. *Id.* at

57.    Because the opposing party had not been given adequate opportunity to investigate—e.g., to seek the testimony of Faulkner and Johnson—on April 21, 2009, the appellate court vacated the order confirming the arbitration award.  The court remanded the case for the trial court to allow further discovery regarding the Faulkner-Johnson relationship. *See id*. at 57–58.

After remand, Faulkner and Johnson were both deposed. *See Karlseng v. Cooke* ("*Karlseng II*"), 346 S.W. 3d 85, 87–88 (Tex. App. 2011).  Fish continued representing its client during remand.  Despite this extra discovery and what it revealed, the trial court again confirmed the award on June 30, 2009, nine months before CEATS filed its complaint in this case.  The state court opponent appealed for the second time.  On November 30, 2010—two months after Faulkner was appointed mediator in this case and six months before the first mediation—Melsheimer argued before the state court of appeals on behalf of Fish's client, urging that the court uphold the arbitration award.[2]  In doing so, Melsheimer defended Faulkner's decision not to disclose his relationship with Johnson.  On June 28, 2011—between the first two mediation sessions in this case—the Texas court of appeals issued its decision vacating the arbitration award, finding that Faulkner's failure to disclose his relationship with Johnson violated his obligations as an arbitrator and tainted the arbitration award.  In its opinion, the appeals court detailed both an enduring social relationship between Faulkner and Johnson, which it said included expensive outings and gifts, and an active business relationship between Faulkner and the Fish firm. *See id*. at 87–94.

---

[2]    Melsheimer's first appearance in this case was a little over a year after he argued the Karlseng appeal.

On May 23, 2012, Faulkner was added as a co-defendant with Fish, Johnson, and others in a state court action. The complaint sought damages for breach of contract and fraud, alleging that Faulkner, Johnson, Fish, and the client breached the arbitration agreement and fraudulently concealed the Faulkner-Johnson-Fish relationship. *See id.* at 92.

### c. Post-Trial Activity

On March 27, 2012, the district court entered final judgment in favor of Continental based on the jury's finding of invalidity. On May 24, 2012, CEATS claims to have first found out about the *Karlseng* litigation because of a news article related to the suit against Faulkner and Fish. After the district court denied numerous post-trial motions, CEATS filed its notice of appeal of the jury's finding of invalidity on August 13, 2012. Three days later, CEATS also moved for relief from the final judgment under Rule 60(b).[3] CEATS argued that it was entitled to relief under Rule 60(b)(3) based on Fish's failure to disclose the facts surrounding the *Karlseng* litigation. CEATS also asserted that, under Rule 60(b)(6), Faulkner's failure to disclose the *Karlseng* litigation and the facts relating thereto warranted relief from judgment. On April 26, 2013, we affirmed the district court's finding of invalidity. *CEATS I*, 526 F. App'x at 966. The district court subsequently denied CEATS's Rule 60(b) motion on June 28, 2013. CEATS now appeals the district court's denial of the Rule 60(b) motion.

The ruling of a district court under Rule 60(b) is final and appealable pursuant to 28 U.S.C. § 1292 (2012). *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1327 (Fed. Cir. 2006). We have jurisdiction under 28

---

[3]   Melsheimer filed Continental's responsive brief in opposition to CEATS's Rule 60(b) motion.

U.S.C. 1295(a)(1) because the claims in this case were for patent infringement.

## II. DISCUSSION

Because the denial of a Rule 60(b) motion is a procedural question not unique to patent law, we review the district court's denial under the law of the regional circuit, in this case, the Fifth Circuit. *Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1369 (Fed. Cir. 1999). In the Fifth Circuit, a district court's denial of a motion under Rule 60(b) is reviewed for an abuse of discretion. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 486 (5th Cir. 2003).

Rule 60(b) states in relevant part that:

On a motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct *by an opposing party*;

. . .

(6) any other reason that justifies relief.

Fed. R. Civ. Proc. 60(b) (emphasis added).

On appeal, CEATS argues that the district court abused its discretion by failing to grant relief from judgment under both Rule 60(b)(3) and Rule 60(b)(6). CEATS contends that Fish's failure to disclose the facts surrounding the *Karlseng* litigation was improper and amounts to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct *by an opposing party*." Fed. R. Civ. Proc. 60(b)(3) (emphasis added). Because the basis for relief under Rule 60(b)(6) must be mutually exclusive from the other five grounds for relief under Rule

60(b), *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988), CEATS argues that it is Faulkner's—not Fish's—failure to disclose the facts surrounding the *Karlseng* litigation that entitles it to relief under Rule 60(b)(6).

### a. Rule 60(b)(3)

In the Fifth Circuit, the party seeking relief under Rule 60(b)(3) must prove by clear and convincing evidence "(1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (citing *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 772 (5th Cir. 1995)). CEATS conceded at oral argument, however, that there is nothing in the record that shows it was not given a full and fair opportunity to present its case. *See* Oral Argument at 6:54, *CEATS, Inc. v. Continental Airlines, Inc.*, 2013-1529, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-1529.mp3 ("There is no evidence, and the 60(b)(3) standard clearly requires the movant to have to be able to show and demonstrate some impact on their ability to have a full and fair trial. And we were not given that opportunity, nor was there time. That's why I think this case, however, can turn on 60(b)(6)."). Because we are constrained to the record, we affirm the district court's finding that CEATS is not entitled to relief under Rule 60(b)(3).

### b. Rule 60(b)(6)

Rule 60(b)(6) gives federal courts authority to relieve a party from a final judgment "upon such terms as are just." *Liljeberg*, 486 U.S. at 863–64; *see* Fed. R. Civ. Proc. 60(b) ("[T]he Court may relieve a party . . . from a final judgment . . . for . . . (6) any other reason that justifies relief."). In *Liljeberg*, the Supreme Court first held that the district court judge violated 28 U.S.C. § 455(a) by

failing to recuse himself. The plaintiff in *Liljeberg* sought a declaration that it owned a hospital then under construction. While the case was pending, the defendant in the case engaged in negotiations with a third party to purchase the hospital. The presiding judge sat on that third party's board of trustees. *Id*. at 852–56. The Supreme Court held that a reasonable observer would have questioned the judge's impartiality and have expected him to recuse himself. *Id*. at 861. Because the judge failed to recuse himself, he violated 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality *might reasonably be questioned*." (emphasis added)).

That violation of § 455(a), however, did not automatically entitle the movant to relief from judgment under Rule 60(b)(6). *Id*. at 863–64 ("Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all § 455(a) violations."). A movant is entitled to relief under Rule 60(b)(6)—the "catch-all" provision—if "such action is appropriate to accomplish justice" and only in "extraordinary circumstances." *Id*. at 863–64 (quoting *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949) (internal quotation marks omitted)). The Supreme Court set forth three factors to consider "in determining whether a judgment should be vacated for a violation of §455(a)": (1) "the risk of injustice to the parties in the particular case;" (2) "the risk that the denial of relief will produce injustice in other cases;" and (3) "the risk of undermining the public's confidence in the judicial process." *Id*. at 864.

Though CEATS argues that the district court was incorrect to apply the *Liljeberg* test to mediators, Appellant's Br. 28–30, it nonetheless relies on the three *Liljeberg* factors to argue for reversal and argues that mediators are bound by the same neutrality requirements as judges and arbitrators. Appellant's Reply 11. Because,

as explained below, we agree with CEATS that mediators are bound by disclosure requirements similar to the recusal requirements of judges, we find it proper to apply the Supreme Court's analysis in *Liljeberg* to mediators. To apply that test, we first consider whether Faulkner violated his duty to disclose by failing to disclose the facts surrounding the *Karlseng* litigation. If Faulkner should have disclosed—similar to how the judge in *Liljeberg* should have recused himself—we would then turn to the three factors to determine if relief under Rule 60(b)(6) is warranted by virtue of that violation.

### 1. Mediators' Neutrality Requirements

Although we recognize that mediators perform different functions than judges and arbitrators, mediators still serve a vital role in our litigation process. Courts depend heavily on the availability of the mediation process to help resolve disputes. Courts must feel confident that they are referring parties to a fair and effective process when they refer parties to mediation. And parties must be confident in the mediation process if they are to be willing to participate openly in it. Because parties arguably have a more intimate relationship with mediators than with judges, it is critical that potential mediators not project any reasonable hint of bias or partiality. Indeed, all mediation standards *require* the mediator to disclose any facts or circumstances that even *reasonably* create a presumption of bias. *E.g.*, Am. Bar Ass'n Model Standards of Conduct for Mediators ("ABA Standards for Mediators") § III.C (2005) ("A mediator shall disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could *reasonably be seen* as raising a question about the mediator's impartiality." (emphasis added)).[4]   This duty to

---

[4]   Because the United States District Court for the Eastern District of Texas has adopted the ABA's stand-

disclose is similar to the recusal requirements imposed on judges.  *Compare* ABA Standards for Mediators § III.C ("A mediator shall disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably

---

ards for mediators, we use that as the primary example of governing disclosure obligations for mediators in this decision.  E.D. Tex. Civ. R. App'x H ¶ IV ("Any person serving as a mediator pursuant to [the United States District Court for the Eastern District of Texas's] plan is subject to the Model Standard of Conduct for Mediators that were adapted by the American Bar Association in August 2005 or similar ethical standards or guidelines."). Because Judge Falkner is a JAMS mediator, moreover, and has agreed to be bound by its disclosure obligations, we refer to those as well.  *See* JAMS Int'l Mediation Rule 6 (2011) ("Any mediator . . . will disclose both to JAMS International and to the parties whether he or she has any financial or personal interest in the outcome of the mediation or whether there exists any fact or circumstance *reasonably likely* to create a presumption of bias." (emphasis added)); *see also* Unif. Mediation Act § 9(a)(1)–(2) (2001) (requiring disclosure of "facts that a *reasonable individual would consider likely* to affect the impartiality of the mediator" (emphasis added)); 1 Alt. Disp. Resol. § 4.44 (3d ed.) (Sep. 2013) ("A mediator must disclose all actual *and potential conflicts* of interest reasonably known to the mediator.  After disclosure, the mediator must decline to mediate unless all parties choose to retain the mediator.  The duty of disclosure governs conduct that occurs during and after the mediation." (emphasis added)); Tex. Mediator Standards of Practice and Codes of Ethics § 4 ("[P]rior to commencing mediation, the mediator shall make full disclosure of any known relationship with their parties or their counsel that may affect or give the *appearance of affecting* the mediator's neutrality." (emphasis added)).

known to the mediator and could *reasonably be seen as raising a question about the mediator's impartiality.*" (emphasis added)) *with* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his *impartiality might reasonably be questioned.*" (emphasis added)).[5]

While mediators do not have the power to issue judgments or awards, because parties are encouraged to share confidential information with mediators, those parties must have absolute trust that their confidential disclosures will be preserved. *See In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 (5th Cir. 1998) ("Confidentiality is critical to the mediation process because it promotes the free flow of information that may result in the settlement of a dispute."); 1 Alt. Disp. Resol. § 4.41 (3d ed.) (Sep. 2013) ("A mediator must be fair and impartial to gain the trust and respect of the parties."). Indeed, mediation is not effective unless parties are

---

[5]   For additional support, see Unif. Mediation Act Official Comments § 9(a)(1)–(2) (2001) ("This provides legislative support for the professional standards requiring mediators to disclose their conflicts of interest . . . . It is consistent with the ethical obligations imposed on other ADR neutrals."); *id.* § 9(c) ("Section 9(a)(1) and 9(b) expressly state that mediators should disclose financial or personal interests, and personal relationships, that 'a reasonable person would consider likely to affect the impartiality of the mediator.' . . . Prudence, professional reputation, and indeed common practice would compel the practitioner to err on the side of caution in close cases."); *see also Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149 (1968) (requiring "that arbitrators disclose to the parties any dealings that might create an impression of *possible* bias" (emphasis added)).

completely honest with the mediator. *See In re Grand Jury*, 148 F.3d at 492; *see also In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011) (collecting cases).

Just as a judge is required to recuse himself under § 455(a) whenever "his impartiality might *reasonably be questioned*," mediators are required to disclose a potential conflict whenever there are facts and circumstances that "could *reasonably be seen* as raising a question about the mediator's impartiality."[6] ABA Standards for Mediators § III.C (emphasis added). Because mediators have disclosure obligations which are similar to the recusal requirement imposed on judges, we find it appropriate to examine Faulkner's disclosure obligation under *Liljeberg*.

### 2. Faulkner's Duty to Disclose the Facts Surrounding the *Karlseng* litigation

Similar to *Liljeberg*, where the Supreme Court first considered whether the presiding judge violated § 455(a), here, we first consider whether Faulkner should have disclosed the facts surrounding the *Karlseng* litigation.[7] The district court decided that a reasonable observer would not have questioned Faulkner's impartiality be-

---

[6] Of course mediators are not subject to the full array of ethical restrictions and obligations imposed upon judicial officers. What we consider today are only the similarities between their respective *disclosure* and *recusal* obligations.

[7] The district court considered whether Faulkner had a duty to disclose the facts surrounding the *Karlseng* litigation as part of the first *Liljeberg* factor: the risk of injustice in this case. As mentioned, however, the Supreme Court considered whether the presiding judge should have recused himself *before* turning to the three Rule 60(b)(6) factors. *Liljeberg*, 486 U.S. at 861–62. We do the same.

cause, unlike the presiding judge in *Liljeberg*, Faulkner: (1) had no fiduciary interest in *Karlseng*; (2) was not compelled to disqualify himself by statute; and (3) did not act as the presiding judge and final fact-finder. Based on these distinctions, the district court refused to find that a reasonably objective person would have expected Faulkner to disclose the facts surrounding the *Karlseng* litigation. On this ground, the district court ruled that Faulkner did not violate his disclosure duty as a mediator.

On appeal, CEATS argues that, as a neutral mediator, Faulkner had a duty to disclose the facts surrounding the *Karlseng* litigation because they gave "the appearance of affecting the mediator's neutrality." Appellant's Br. 23 (quoting Tex. Mediator Standards of Practice and Codes of Ethics § 4). CEATS insists that the facts of the *Karlseng* litigation reasonably affect the appearance of Faulkner's neutrality and impartiality.

Continental responds that Faulkner did not have a duty to disclose because Johnson was not involved in this case and Melsheimer was not involved in the case at the time of the first mediation. Continental further argues that no disclosure was necessary because Fish did not actually represent Faulkner in the *Karlseng* matter. Instead, Fish represented its client by arguing that Faulkner's arbitration award should be upheld.

We find that the district court erred in finding that a reasonably objective person would not have wanted to consider circumstances surrounding the *Karlseng* litigation when deciding whether to object to Faulkner's appointment as mediator in this case. The district court's reasons for distinguishing *Liljeberg* are unpersuasive. Mediators are required to disclose not only financial interests, but all potential conflicts of interests as well. *See* ABA Standards for Mediators § III.C. Furthermore, Faulkner does not have to be "compelled by statute to

disqualify himself" for disclosure to be necessary. *Rule 60(b) order*, slip op. at 16; *see* ABA Standards for Mediators § III.C. To the extent the district court seems to imply a different disclosure requirement for mediators and judges because Faulkner "had no authority to make or influence legal or factual rulings in this case," we reject that implication. *Rule 60(b) order*, slip op. at 16. As discussed, a mediator's duty to disclose potential conflicts where impartiality might reasonably be questioned is analogous to a judge's duty to recuse under § 455(a). *Compare* ABA Standards for Mediators § III.C *with* 28 U.S.C. § 455(a).

In this case, at the same time Faulkner served as the court-appointed mediator, the Faulkner-Johnson-Fish relationship was directly at issue in a state appellate court. Importantly, this meant that Fish, as a firm, was actively defending Faulkner's personal disclosure decisions while he was mediating this case. Despite the absence of a formal attorney-client relationship, Fish's ongoing defense of Faulkner's award reasonably could give rise to the appearance impropriety. After the Texas appellate court remanded the case for discovery regarding the Faulkner-Johnson relationship in *Karlseng I*, moreover, Faulkner was compelled to provide testimony. Though the record does not reveal any coordination between Fish and Faulkner, the mere fact that Faulkner testified in support of the arbitration award and was asked, not just about his relationship with Johnson, but with the Fish firm and its clients as well, further emphasizes the need for disclosure on these facts.

Furthermore, the Texas appeals court's decision holding that Faulkner breached his disclosure obligations in the *Karlseng* litigation was released on June 28, 2011—between the first two mediation sessions in this case, and well before the third. *See* Joint Appendix ("J.A.") 1095 (explaining that the parties engaged in official mediations on June 21, 2011 and June 30, 2011). Thus, the state

court found that the Faulkner-Johnson-Fish relationship was a disqualifying, social and business relationship, which "could reasonably be seen as raising a question about the mediator's impartiality" while this case was ongoing.  ABA Standards for Mediators § III.C; *see Karlseng II*, 346 S.W. 3d at 87–94 (detailing the lengthy Faulkner-Johnson relationship, including lavish gifts and outings and discussing matters in which Fish retained Faulkner as a neutral, and the fact that Faulkner requested and was granted an opportunity to make a presentation to Fish attorneys, which the state court characterized as a business development pitch by Faulkner); *see also Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1114 (5th Cir. 1980) (recognizing that a partner in a participating law firm will always have some interest in the outcome of a case handled by his firm).

We find it irrelevant that Johnson was not counsel of record in this litigation.  While the personal relationship with Johnson is what spurred the inquiry in the *Karlseng* litigation, the continuing and intrusive nature of that inquiry, the Fish firm's and Melsheimer's role in defending against claims that Judge Falkner violated his disclosure obligations, and the state court's findings regarding Faulkner's business dealings with the Fish firm generally, make clear that Faulkner's obligation to disclose at that point in time extended beyond Johnson alone.  *See* ABA Standards for Mediators § III.C.

We need not decide whether any one of the facts regarding Faulkner's interaction with the Fish firm was sufficient to require disclosure on its own.  We merely hold that, based on the totality of the facts and circumstances surrounding the *Karlseng* litigation, Faulkner breached his duty as a mediator to disclose "all actual and potential conflicts of interest that are reasonably known to the mediator and could *reasonably be seen* as raising a question about the mediator's impartiality." ABA Standards for Mediators § III.C (emphasis added).

### 3. The Three *Liljeberg* Factors

Faulkner's failure to disclose does not automatically entitle CEATS to relief from judgment under Rule 60(b)(6), however. *Liljeberg*, 486 U.S. at 863–64. We still must consider the three *Liljeberg* factors to determine whether this case presents an "extraordinary circumstance" where relief from judgment is warranted. *See id.*

In *Liljeberg*, the Supreme Court first turned to the risk of injustice in the particular case and identified four facts that might reasonably have caused an objective observer to question the judge's impartiality in the particular case: (1) the judge regularly attended board meetings of the third party and the third party had long been interested in acquiring a hospital in the specific location of the hospital at issue; (2) before he entered judgment, the judge received (but did not examine) board minutes that specifically noted the conflict of interest; (3) the judge failed to recuse himself even after he acquired actual knowledge of his financial interest in the case; and (4) the judge denied the movant's motion to vacate the judgment without acknowledging that he had known about the third party's interest shortly before and shortly after trial. *Id.* at 865–867. The Supreme Court further explained that relief under Rule 60(b)(6) "may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." *Id.* at 868. Avoiding this seeming impropriety would also promote the public confidence in the judicial process. *Id.* at 865.

CEATS argues that the first factor—the risk of injustice in this case—supports relief because mediators are required to disclose any potential conflicts of interest that could reasonably be seen as raising a question about the mediator's impartiality. In this case, CEATS insists that, because "there are real questions regarding the risk that

[confidential] information was released to [Continental's] counsel," there is a risk of injustice in this case. Appellant's Br. 32. Continental counters that there is simply no evidence that Faulkner impermissibly disclosed any confidential information. Continental further argues that CEATS had an opportunity to fully and fairly litigate its claims at a trial in which Faulkner played no role.

We agree with Continental that CEATS has failed to show a meaningful risk of injustice in this case. Although we conclude that Faulkner should have disclosed the circumstances surrounding the *Karlseng* litigation and his relationship with the Fish firm relating thereto, we find that CEATS ultimately was able to fully and fairly present its case before an impartial judge and jury. As CEATS admitted at oral argument, moreover, there is no evidence in the record that suggests that Faulkner wrongfully disclosed confidential information, and CEATS never sought discovery of Faulkner in an effort to determine if any such disclosure occurred. *See* Oral Argument at 6:54. Because of this, we find no risk of injustice in this case based on Faulkner's failure to disclose.

Turning to the second *Liljeberg* factor—the risk of injustice in other cases—CEATS argues that, by failing to provide a remedy for Faulkner's non-disclosure of the *Karlseng* litigation, mediators in future cases will have less incentive to disclose potential conflicts of interest and parties will lose faith in the mediation process. Indeed, CEATS also contends that, if the district court's ruling is allowed to stand, the mediator's disclosure requirement would be meaningless. Continental responds that there is no risk of injustice in other cases because there was no duty for Faulkner to disclose in this case, an argument we have already rejected. Continental asserts, moreover, that far more injustice and disruption would result from allowing losing parties to throw out unfavorable judgments by challenging a mediator's disclosure requirement.

We too have concerns about failing to provide a remedy for a mediator's non-compliance with his or her disclosure obligations. We certainly do not want to encourage similar non-disclosures. On this record, however, we do not believe there is a sufficient threat of injustice in other cases to justify the extraordinary step of setting aside a jury verdict. We find it unlikely that mediators will simply ignore their disclosure obligations if we deny relief here. To the contrary, our decision serves to reinforce the broad disclosure rules for mediators by holding that Faulkner had a duty to disclose in this case. The mere fact that the final judgment after a full jury trial will not be overturned every time a mediator fails to disclose a potential conflict is not likely to affect the disclosure decisions of other mediators. *Accord Liljeberg*, 486 U.S. at 863–64 (holding that relief from judgment is not automatic even if the presiding judge violates § 455 by failing to recuse himself). Beyond his failure to disclose, moreover, there is no evidence that Faulkner acted inappropriately or ineffectively when mediating this case. *See* Oral Argument at 6:54. We therefore find that the denial of relief in the circumstances of this case will not risk injustice in other cases.

Regarding the third *Liljeberg* factor—the risk of undermining public confidence—CEATS asserts that Faulkner's non-disclosure undermines public confidence in the neutrality of court-appointed mediators. Again, Continental's only response is that, because Faulkner did not have a duty to disclose anything, there can be no danger of undermining public confidence.

While we find that public confidence in the mediation process will be undermined to some extent by our failure to put greater teeth in the mediators' disclosure obligations, we do not find that fact justifies the extraordinary relief CEATS seeks. Because CEATS had the opportunity to present its case to a neutral judge and jury, we do not believe that refusing to grant the relief CEATS seeks will

undermine public confidence in the judicial process as a whole. As the Supreme Court explained, Rule 60(b)(6) "should only be applied in 'extraordinary circumstances.'" *Liljeberg*, 486 U.S. at 864 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). CEATS is seeking relief from judgment by an impartial jury after litigating the matter before an unbiased judge; granting that relief is what would be most extraordinary. Because we find insufficient risk to public confidence in the justice process as a whole, we hold that the third *Liljeberg* factor does not weigh heavily in favor of relief under Rule 60(b)(6).

Because, on balance, we find that the *Liljeberg* factors do not justify relief in this case, we hold that the district court correctly denied CEATS relief from judgment under Rule 60(b)(6), despite what we deem to be a failure of the mediator's disclosure obligations.

## III. CONCLUSION

For the foregoing reasons, we affirm the denial of relief from judgment under Rule 60(b).

**AFFIRMED**