**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 27**

Docket No. CH-1221-17-0318-W-1

**Mitzi Baker,**

**Appellant,**

**v.**

**Social Security Administration,**

**Agency.**

August 4, 2022

Mitzi Baker, Chicago, Illinois, pro se.

James Hail, Esquire, Linda M. Januszyk and Suzanne E. Duman, Esquire, Chicago, Illinois, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## OPINION AND ORDER

¶1 The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA) appeal. For the following reasons, we GRANT the petition for review, VACATE the initial decision, and REMAND the appeal for assignment to a different administrative judge and a new hearing.

## BACKGROUND

¶2 At all times relevant to this appeal, the appellant held a Paralegal Specialist position at the agency's Chicago National Hearing Center (NHC). Initial Appeal

File (IAF), Tab 1 at 1, Tab 57 at 59. In October 2016, she filed a complaint with the Office of Special Counsel (OSC), alleging that the agency had retaliated against her for engaging in whistleblowing disclosures and other protected activities. IAF, Tab 1 at 10-21. Over the ensuing months, the appellant and OSC exchanged correspondence—only some of which is included in the record—as the appellant further elaborated about her allegations. *Id.* at 22-25. Ultimately, OSC closed the matter. *Id.* at 26-29. The appellant then filed the instant IRA appeal. IAF, Tab 1.

¶3 The administrative judge found that the appellant met her jurisdictional burden. IAF, Tab 20 at 7-10. During a prehearing conference, the administrative judge revealed to the parties that he had an "ongoing personal relationship" with an attorney "who works in the same agency office as the appellant." IAF, Tab 24 at 1. He indicated that this "relationship would not adversely impact" his impartiality, but he permitted the parties to file a motion seeking his recusal. *Id.* The appellant did just that, but the agency argued that recusal was unnecessary. IAF, Tabs 39, 41. The administrative judge denied the appellant's request for recusal, as well as her subsequent motion to reconsider and request to certify this issue for interlocutory appeal. IAF, Tab 43 at 1-3, Tab 46 at 1-2, Tab 54 at 1-2, Tab 59 at 5, Tab 60 at 1-2.

¶4 Because he found that the appellant met her jurisdictional burden, the administrative judge held a hearing on the merits. Hearing Transcript, Day 1; Hearing Transcript, Day 2. After doing so, the administrative judge found that the appellant failed to meet her burden of proving that she made any whistleblowing disclosures or engaged in any protected activity. IAF, Tab 77, Initial Decision (ID) 11-54. He therefore denied the appellant's request for corrective action. ID at 55.

¶5 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 2. The agency has filed a response, and the appellant has replied. PFR File, Tabs 4, 7.

## ANALYSIS

¶6    In pertinent part, the appellant argues on review that the administrative judge should have construed her pleadings liberally, he repeatedly ruled against her, he exhibited improper behavior, he was biased against her, and he had a conflict of interest. PFR File, Tab 2 at 2-7. As further detailed below, most of the appellant's arguments in this regard are not persuasive. However, we find that the administrative judge erred in denying the appellant's request for recusal.

Because the administrative judge's impartiality could reasonably be questioned, he erred in denying the appellant's request for recusal.

¶7    From its inception, the Board has had a regulation, at 5 C.F.R. § 1201.42, concerning the disqualification of administrative judges. *Washington v. Department of the Interior*, 81 M.S.P.R. 101, ¶ 7 (1999). Section 1201.42(a) simply provides that if an administrative judge considers himself or herself disqualified, he or she will withdraw from the case.[1] 5 C.F.R. § 1201.42(a). Yet, this regulation is not the sole source of our disqualification standards. The Board also looks to the disqualification standards Congress established for the Federal judiciary at 28 U.S.C. § 455. *Washington*, 81 M.S.P.R. 101, ¶¶ 7-8; *see Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 20 (2010) (indicating that it is the Board's policy to follow the standard set out at 28 U.S.C. § 455). Among other things, section 455 requires recusal "in any proceeding in which

---

[1] The regulation also provides for how a party may request a judge's recusal. Specifically, a party may file a motion requesting recusal on the basis of personal bias or other disqualification, but must do so in an affidavit or sworn statement, as soon as the party has reason to believe there is a basis for disqualification. 5 C.F.R. § 1201.42(b). If the judge denies the motion, the party may request certification of the issue as an interlocutory appeal. 5 C.F.R. § 1201.42(c). Failure to do so is considered a waiver of the request for recusal. *Id.* Although the appellant's initial request for recusal was not in the form of an affidavit or sworn statement, IAF, Tab 39, she effectively remedied the oversight and complied with the regulatory requirements by submitting a request for reconsideration in the form of a sworn statement, IAF, Tab 46 at 1-3.

[the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *Allphin v. United States*, 758 F.3d 1336, 1343-44 (Fed. Cir. 2014) (quoting 28 U.S.C. § 455(a)); *see* PFR File, Tab 2 at 7 (alluding to the same basic standard). "This is an objective test that mandates recusal 'when a reasonable person, knowing all the facts, would question the judge's impartiality.'" *Allphin*, 758 F.3d at 1344 (internal citations omitted). An "[a]ppellant['s] subjective beliefs about the judge's impartiality [is] irrelevant." *Id.*

¶8      The Board has infrequently addressed 28 U.S.C. § 455(a) and circumstances in which an administrative judge's impartiality reasonably might be questioned. In two companion cases, the Board considered on interlocutory appeal whether an administrative judge should recuse himself from appeals involving a particular law firm because of a pending unfair labor practices (ULP) charge that the firm filed against the administrative judge at the Federal Labor Relations Authority. *Colburn v. Department of Justice*, 81 M.S.P.R. 146, ¶¶ 3-6 (1999); *Washington*, 81 M.S.P.R. 101, ¶¶ 3-6. Generally speaking, the ULP charge stemmed from a prior case involving a different agency and a different appellant in which the firm believed the administrative judge's credibility findings reflected bias against union officials. *Colburn*, 81 M.S.P.R. 146, ¶ 3; *Washington*, 81 M.S.P.R. 101, ¶ 3. The administrative judge denied the request to recuse. *Colburn*, 81 M.S.P.R. 146, ¶ 5; *Washington*, 81 M.S.P.R. 101, ¶ 5. Among other things, he conceded that his prior credibility findings were unclear, but he indicated that they had been misconstrued. *Colburn*, 81 M.S.P.R. 146, ¶ 5; *Washington*, 81 M.S.P.R. 101, ¶ 5. He further found that the ruling in the other case was "wholly unrelated" to *Colburn* and *Washington*. *Colburn*, 81 M.S.P.R. 146, ¶ 5; *Washington*, 81 M.S.P.R. 101, ¶ 5.

¶9      On interlocutory review, the Board indicated that it takes seriously the concerns of parties who come before it and assert a claim that a particular judge should be disqualified. *Colburn*, 81 M.S.P.R. 146, ¶¶ 6-7; *Washington*, 81 M.S.P.R. 101, ¶¶ 6-7. Yet the Board agreed with the administrative judge and

found that recusal was not required.  The Board explained that the appellant had presented nothing more than a bare claim that the judge "may" be biased by counsel's activity in a separate case, involving a different appellant and a different agency, unsupported by any hint that the judge acted or ruled inappropriately in the appeals at issue.  *Colburn*, 81 M.S.P.R. 146, ¶¶ 9-10; *Washington*, 81 M.S.P.R. 101, ¶ 19.  Under the circumstances, the Board concluded that any risk of the appearance of a conflict of interest was not enough to warrant a different result.  *Colburn*, 81 M.S.P.R. 146, ¶¶ 9-10; *Washington*, 81 M.S.P.R. 101, ¶ 19.

¶10    More recently, the Board considered whether an administrative judge should have been disqualified from an appeal on remand from our reviewing court because the appellant wrote and self-published a book that commented unfavorably on the administrative judge's physical appearance and competence, among other things.  *Shoaf v. Department of Agriculture*, 97 M.S.P.R. 68, ¶¶ 6, 8-9 (2004), *aff'd*, 158 Fed. App'x 267 (Fed. Cir. 2005).  Generally speaking, the Board reasoned that the book at issue in *Shoaf* merely conveyed the appellant's opinion about the administrative judge, not the administrative judge's opinion about the appellant, and the appellant did not present any facts establishing the administrative judge's reaction to the book.  *Id.*, ¶ 10.  Thus, the Board concluded that the administrative judge did not abuse his discretion in denying the request for recusal.  *Id.*  The Board also explained that a contrary result could encourage future parties to act similarly for purposes of judge-shopping.  *Id.*

¶11    In another case, the Board considered whether an administrative judge should have recused herself from an appeal because she had previously worked with the respondent agency's representative.  *Lee*, 115 M.S.P.R. 533, ¶ 18.  There, the Board found that the administrative judge erred by failing to apply the standard of 28 U.S.C. § 455(a) when she denied the appellant's motion to recuse and the motion to certify an interlocutory appeal of her ruling.  *Id.*, ¶¶ 19-20.

Nevertheless, the Board found that even under the appropriate standard, the administrative judge did not need to recuse himself because the professional association at issue was unremarkable and a reasonable, objective observer would not question the administrative judge's impartiality. *Id.*, ¶ 22. Significantly, the administrative judge and the agency representative were merely acquainted as former colleagues years before at an agency that was not a party to the appeal at issue. *Id.*, ¶¶ 18, 21-23.

¶12    Turning back to the facts of the instant appeal, the administrative judge recognized and disclosed that he had an "ongoing personal relationship" with an attorney who worked in the same Chicago NHC office as the appellant. IAF, Tab 24 at 1. While the administrative judge's status conference summary describing this disclosure provided no further details about the nature of the relationship, the appellant later characterized it as a romantic one. IAF, Tab 39 at 2. She further asserted that the administrative judge refused to elaborate about the length of the relationship because it was "irrelevant." *Id.* The administrative judge provided no additional information about the nature of his ongoing personal relationship with the attorney.

¶13    In her motion to recuse, the appellant indicated that the attorney was "against the appellant" and worked for a particular administrative law judge (ALJ) whom the appellant described as "one of the alleged discriminating officers." IAF, Tab 39 at 2, Tab 46 at 1. The agency responded to the appellant's request by arguing that the administrative judge did not need to recuse himself. IAF, Tab 41. Among other things, the agency noted that the attorney at issue was 1 of 28 attorneys and 86 total employees in the Chicago NHC, and she was not a witness in this appeal. *Id.* at 5-6.

¶14    In denying the motion to recuse, the administrative judge discussed the Board's general standards for a claim of bias, along with 5 C.F.R. § 1201.42, and he noted that the appellant's evidence made no mention of the attorney in question. IAF, Tab 43 at 1-3. He did *not*, however, consider 28 U.S.C. § 455(a)

and/or whether his "impartiality might reasonably be questioned" or even acknowledge the fact that the agency's evidence mentioned that attorney. *See* IAF, Tab 33 at 46-59.

¶15     Similarly, in denying the motion to reconsider, the administrative judge alluded to the standard provided in the Merit Systems Protection Board (MSPB) Judges' Handbook, but he found that the associated standard did not require recusal in this case.[2]  IAF, Tab 54 at 1, Tab 60 at 2.  Again, in denying the motion to reconsider and request for certification for interlocutory appeal, the administrative judge did not refer to or apply the standard delineated in 28 U.S.C. § 455(a).

¶16     On review, the appellant reasserts that the administrative judge should have recused himself from this appeal based on his personal relationship with the attorney who is the appellant's coworker.  PFR File, Tab 2 at 5, 7.  She argues that the attorney "submitted negative statements to [a]gency investigators regarding the appellant and those statements were submitted in the [a]gency's affirmative defense."  *Id.* at 5.  Although the appellant failed to direct us to any such statements, it appears that she may be referring to a statement from the aforementioned ALJ.  IAF, Tab 33 at 46-59.

¶17     In the ALJ's statement, which was submitted by the agency, the ALJ discussed her own negative interactions with and feelings about the appellant.  *Id.* She also provided a brief description of her two subordinate attorneys having similar feelings about the appellant, including the attorney in the ongoing personal relationship with the administrative judge.  IAF, Tab 33 at 51-52.

---

[2] The MSPB Judges' Handbook describes two bases for which an administrative judge may recuse:  (1) a party, witness, or representative is a friend or relative of, or has had a close professional relationship with the judge, or (2) personal bias or prejudice of the judge.  MSPB Judges' Handbook, Ch. 3, § 2(a)-(b); *but see Gregory v. Department of the Army*, 114 M.S.P.R. 607, ¶ 22 (2010) (explaining that the MSPB Judges' Handbook is not mandatory and failure to apply its provisions does not establish adjudicatory error).

Specifically, the ALJ asserted that her "two Attorney Advisors were finding it increasingly difficult dealing with [the appellant]." *Id.* at 51. The ALJ further indicated that the attorney who was in an ongoing personal relationship with the administrative judge "started closing [her] office door, and she has never been a closed door person," while the other subordinate attorney "repeatedly complained . . . of how difficult [the appellant] was." *Id.* The record reflects that the other subordinate attorney was the subject of a disclosure that the appellant raised in this appeal, while the ALJ was herself one of several recipients of the disclosure, and the ALJ's authority was a consideration in the administrative judge's analysis. *Compare* IAF, Tab 20 at 8 (describing in the jurisdictional order the allegations underlying disclosure 4), *with* IAF, Tab 33 at 51-52 (Chicago ALJ's discussion of her two subordinate attorneys), *and* ID at 34-36 (finding that disclosure 4 was not protected).

¶18 Put more simply, the record reflects the following about the attorney with whom the administrative judge was in an ongoing personal relationship: (1) she was one of only two attorneys working for a particular ALJ at the Chicago NHC, (2) the other two members of her working group were the subject of or recipient of the appellant's alleged disclosure, and (3) all three employees had negative views of the appellant, according to evidence submitted by the agency.

¶19 Under these particular circumstances, and in contrast to *Lee*, *Shoaf*, *Washington*, and *Colburn*, we find that the administrative judge's impartiality *could* reasonably be questioned. To be sure, we may have reached a different conclusion if the administrative judge had chosen to provide more information about his relationship with the attorney who was the appellant's coworker or if the attorney was further removed from the issues involved in this appeal. *See, e.g.*, *Ragozzine v. Youngstown State University*, 783 F.3d 1077, 1078-81 (6th Cir. 2015) (finding that recusal was not required under 28 U.S.C. § 455 in a case involving a professor's denial of tenure when the judge was dating a professor in a different department at the same university). Those are not,

however, the circumstances we currently face. Because we find that the administrative judge's impartiality reasonably might be questioned under the circumstances presented in this appeal, he should have recused himself from this matter.

The appellant's arguments of actual bias or other adjudicatory improprieties on review are not persuasive.

¶20    In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶21    The appellant is correct to note that the Board will construe pro se pleadings liberally. *Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 97 (1989), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table). However, in arguing that the administrative judge failed to adhere to that principle, the appellant asserts that he "denied every pleading" she wrote. PFR File, Tab 2 at 5. Her assertion is not supported by the record. *E.g.*, IAF, Tab 20 (ruling in the appellant's favor regarding jurisdiction), Tab 43 at 5 (granting the appellant's motion to extend the discovery period).

¶22    More specifically, the appellant argues that she "fell severely ill" during the adjudication of her appeal, but the administrative judge improperly refused any delay. PFR File, Tab 2 at 6. In fact, the appellant filed a motion requesting a postponement of all deadlines to accommodate her medical condition without any evidence of her medical condition or indication that she had first raised the subject with the agency. IAF, Tab 40 at 1. Although the administrative judge

responded by denying the motion, he suggested that the appellant could instead move for a dismissal without prejudice. IAF, Tab 40 at 1, Tab 43 at 4. We discern no reason to conclude that the decision to deny the motion constituted an abuse of discretion or reflected bias on the part of the administrative judge. *See Desmond v. Department of Veterans Affairs*, 90 M.S.P.R. 301, ¶ 4 (2001) (recognizing that an administrative judge has wide discretion to control the proceedings before him and dismissal without prejudice to refiling is a procedural option left to his sound discretion); *see also Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 18 (2013) (stating that the Board will not infer bias based on an administrative judge's case-related rulings).

¶23    The appellant's other allegations of administrative judge bias or adjudicatory improprieties are similarly unsupported or otherwise unavailing. For example, she summarily asserts that the administrative judge "engaged in a conspiracy with [a]gency counsel to demean, belittle, intimidate, harass, and use [her] disabilities against her in their quest to discredit [her] at every turn." PFR File, Tab 2 at 5. However, she has not directed us to anything in the record to support this contention. In another example, the appellant suggests that the administrative judge purposefully delayed issuance of the initial decision to avoid having a particular Board Member render an opinion on her case before the expiration of his statutorily-limited term. PFR File, Tab 2 at 6-7. But in fact, the Board was without a quorum since January 2017, well before the end of the Board Member's term, and it did not render opinions throughout the relevant period.

<u>The appropriate remedy for the administrative judge's failure to recuse himself is remand and assignment to a different administrative judge for a new hearing.</u>

¶24    For the Federal judiciary, a judge's violation of 28 U.S.C. § 455(a) does not necessarily entitle a party to relief. *Liljeberg v. Health Services Acquisition Corporation*, 486 U.S. 847, 862-64 (1988). The statute itself does not authorize a remedy. *Id.* at 862. Instead, Federal courts have applied Federal Rule of Civil Procedure 60(b), which authorizes vacating a final judgment for "any [] reason

that justifies relief." Fed. R. Civ. Pro. 60(b)(6); *see Liljeberg*, 486 U.S. at 863. However, such action "should only be applied in 'extraordinary circumstances.'" *Liljeberg*, 486 U.S. at 864 (internal citations omitted).

¶25      In determining whether a violation of 28 U.S.C. § 455(a) warrants vacating a final judgment pursuant to Rule 60(b)(6), the U.S. Supreme Court (Supreme Court) in *Liljeberg* identified three relevant factors: (1) "the risk of injustice to the parties in the particular case," (2) "the risk that the denial of relief will produce injustice in other cases," and (3) "the risk of undermining the public's confidence in the judicial process." *Id.* We will consider the same factors here. *See Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶ 27 (2017) (recognizing that the Federal Rules of Civil Procedure are not controlling, but they may be used as a general guide in proceedings before the Board); *Anderson v. Department of Transportation*, 46 M.S.P.R. 341, 350 (1990) (finding the Supreme Court's analysis of Rule 60(b) was analogous to the Board's authority to reopen a case under 5 C.F.R. § 1201.117), *aff'd*, 949 F.2d 404 (Fed. Cir. 1991) (Table).

¶26      A review of the Court's analysis in *Liljeberg* is instructive. There, the judge had presided over a case while also serving on the Board of Trustees of Loyola University, which was actively negotiating a land deal with the petitioner, and Loyola's success and benefit in those negotiations largely hinged on the petitioner's success before the judge. *Liljeberg*, 486 U.S. at 850. The respondent learned of the judge's membership on the Board of Trustees 10 months after the U.S. Court of Appeals for the Fifth Circuit (Fifth Circuit) affirmed the judge's decision to find in favor of the petitioner. *Id.* The respondent moved to vacate the judgment pursuant to Rule 60(b)(6). The judge denied the motion and the respondent appealed. *Id.* After protracted litigation, the Fifth Circuit vacated the original judgment. *Id.* at 851-52. In pertinent part, the court found that the judge should have immediately disqualified himself when he had actual knowledge of Loyola's interest in the case; alternatively, it found that, absent actual knowledge,

"the appearance of partiality was convincingly established," and the appropriate remedy was to vacate the judgment. *Id.* The Supreme Court affirmed the finding that an objective observer would have questioned the judge's impartiality and the judge's failure to recuse himself was a violation of 28 U.S.C. § 455(a). *Id.* at 861-62. Then the Court evaluated the three factors discussed above to determine the proper remedy. *Id.* at 862-70.

¶27    For the first of the aforementioned factors, the risk of injustice to the parties in the case, the Court identified the following facts that might reasonably cause an objective observer to question the judge's impartiality: (1) it was "remarkable" that although the judge regularly attended Board of Trustees meetings, he "completely forgot" about Loyola's interest in the land; (2) it was an "unfortunate coincidence" that he was absent from a particular Board of Trustees meeting during which the case before him was discussed; (3) it was both "remarkable" and "quite inexcusable" that he failed to recuse himself once he had actual knowledge of Loyola's interest in the case; and (4) in denying the motion to vacate, the judge did not acknowledge either his knowledge about Loyola's interest in the case or an awareness of a duty to recuse himself. *Id.* at 865-67. Ultimately, the Court concluded that there was "a greater risk of unfairness in upholding the judgment in favor of [the petitioner] than there [was] in allowing a new judge to take a fresh look at the issues." *Id.* at 868.

¶28    For the second factor, the risk that denying relief would cause injustice in other cases, the Court found that providing relief may prevent injustices in future cases by encouraging judges to promptly recuse themselves when grounds for disqualification arise. *Id.* In a discussion that implicated the third factor, the risk of undermining public confidence in the judicial process, the Court found that the facts at hand created "precisely the kind of appearance of impropriety that § 455(a) was intended to prevent. The violation [was] neither insubstantial nor excusable." *Id.* at 867. The Supreme Court therefore affirmed the decision to vacate the original judgment. *Id.* at 870.

¶29      By contrast, our reviewing court found that a new trial was not required in *CEATS Incorporated v. Continental Airlines Incorporated*, 755 F.3d 1356 (Fed. Cir. 2014).  In that case, the court found that a mediator breached his duty to disclose an actual or potential conflict that could reasonably raise questions about his impartiality.  *Id.* at 1364.  Nevertheless, because settlement negotiations before the mediator were unsuccessful, the *CEATS* matter was resolved by an impartial judge and jury, and there was no evidence that the mediator disclosed confidential information, the court found no meaningful risk of injustice under the first *Liljeberg* factor.  *Id.* at 1358, 1366.  Concerning the second *Liljeberg* factor, the court indicated that it did not want to encourage similar failures to disclose by other mediators, but the threat of injustice in other cases was insufficient to warrant "the extraordinary step of setting aside a jury verdict." *Id.*  Similarly, for the third *Liljeberg* factor, the court recognized that the failure to provide relief could undermine public confidence to a degree, but it was not enough to justify a new trial.  *Id.* at 1367.

¶30      Turning back to the facts before us, we find that vacating the initial decision and remanding the appeal for assignment to a different administrative judge and a new hearing is the most appropriate remedy.  Concerning "the risk of injustice to the parties in the particular case," we have already expressed reasons why the administrative judge's impartiality reasonably might be questioned. *Supra* ¶¶ 17-19.  Also significant to our analysis is the fact that the administrative judge's initial decision relied in part on demeanor-based credibility findings in favor of the agency and against the appellant, which are virtually unreviewable on appeal to the Board.   ID at 39-40; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1299-01 (Fed. Cir. 2002) (the Board must defer to the credibility determinations of an administrative judge when they are based, explicitly or implicitly, upon the observation of the demeanor of witnesses testifying at a hearing because the administrative judge is in the best position to observe the demeanor of the witnesses and determine which witnesses were testifying

credibly); *Thomas v. U.S. Postal Service*, [116 M.S.P.R. 453](), ¶ 5 (2011) (further discussing the deference afforded to demeanor-based credibility findings). Thus, the risk of injustice to the appellant appears quite high. As for the risk of injustice to the agency, it is noteworthy that this appeal sought relief from a number of alleged personnel actions, but they did not include removal or any other action that could result in the lengthy and ongoing accrual of damages in the form of back pay during the delay associated with a remand. IAF, Tab 20 at 9-10. Thus, the risk of injustice to the agency appears to be limited. *See Liljeberg*, 486 U.S. at 868-69 (finding that the first *Liljeberg* factor weighed in favor of a new trial because, among other things, no party showed that they had detrimentally relied on the original judgment).

¶31     Concerning "the risk that the denial of relief will produce injustice in other cases," questions of conflicts and recusal come before the Board's administrative judges on a regular basis. Accordingly, we are hesitant to excuse the circumstances at hand, lest we give the impression that administrative judges need not take these questions seriously. *See Liljeberg*, 486 U.S at 868 (finding that enforcement of [28 U.S.C. § 455]() may encourage more disclosures and thoughtful recusal decisions in the future).

¶32     Finally, we find that "the risk of undermining the public's confidence in the judicial process," similarly weighs in favor of remand and assignment to a different administrative judge for a new hearing. The circumstances at hand do not give rise to a perception that the administrative judge had a significant financial or professional interest in a certain result, as was the case in *Liljeberg*. Nevertheless, the circumstances could still undermine confidence in the Board if we were to excuse the administrative judge's decision to preside over this appeal. The situation seems particularly fraught because the administrative judge provided minimal information about the nature of his ongoing personal relationship with the attorney who was the appellant's coworker. *See Liljeberg*, 486 U.S. at 864-65 (acknowledging that "people who have not served on the

bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges"). We can imagine a scenario in which an administrative judge provided additional details about the nature of the relationship and his efforts to insulate himself from having any knowledge about the workplace environment that would limit any erosion of public confidence. Here, however, the record reads as if the administrative judge was coy about the nature of his relationship with the attorney and ignored agency evidence depicting, at best, an unpleasant professional association between the appellant and the attorney.

¶33      After weighing the relevant factors, we find that vacating the initial decision and remanding the appeal for assignment to a different administrative judge and a new hearing is appropriate. While we have not found that the administrative judge exhibited actual bias against the appellant, he nonetheless should have granted the appellant's request to recuse him under the circumstances presented in this case. The appropriate remedy in this matter is a new hearing before a different administrative judge whose impartiality cannot reasonably be questioned.

## ORDER

¶34    For the reasons discussed above, we vacate the initial decision and remand this case to the regional office for assignment to a different administrative judge and further adjudication in accordance with this Opinion and Order.

FOR THE BOARD:

/s/
_____

Jennifer Everling
Acting Clerk of the Board
Washington, D.C.